NATIONAL LABOR RELATIONS BOARD v. AMERICAN POTASH & CHEMICAL CORPORATION (ALLIED CHEMICAL WORKERS' ASS'N OF TRONA, CAL., Intervener).

No. 8681.

Circuit Court of Appeals, Ninth Circuit.
June 27, 1938.

As Amended on Denial of Rehearing
Sept. 10, 1938.

Charles Fahy, Gen. Counsel, National Labor Relations Board, Robert B. Watts, Associate Gen. Counsel, and Laurence A. Knapp, Lawrence Hunt, Bertram Edises, Thomas I. Emerson, Philip Levy, and Mortimer B. Wolf, Attys. National Labor Relations Board, all of Washington, D. C., for petitioner.

Gibson, Dunn & Crutcher, J. Stuart Neary, Henry B. Ely, and David P. Evans, all of Los Angeles, Cal., for respondent.

Robert E. Ford, of Los Angeles, Cal., for intervener.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

The National Labor Relations Board petitions this court for an order enforcing its order requiring the respondent American Potash and Chemical Corporation to cease and desist from certain unfair labor practices prohibited by the National Labor Relations Act (49 Stat. 449, 29 U.S.C.A. § 151 et seq.) and to take certain affirmative action designed to effectuate the policies of the Act.

The respondent is a Delaware corporation engaged in Trona, California, in the manufacture of potash, boric acid, borax, soda ash and sodium sulphate. It has approximately 900 employees. Over 92 percent of respondent's products are shipped in interstate and foreign commerce.

Pursuant to charges filed with the Board by Borax and Potash Workers' Union No. 20181 (hereinafter referred to as the Union) an affiliate of the American Federation of Labor, the Board, through its Regional Director, at Los Angeles, brought complaints against the respondent alleging that respondent had interfered with, coerced, or restrained employees in their exercise of the right to bargain collectively through representatives of their own choosing, contrary to section 8(1) of the Act, 29 U.S.C.A. § 158(1); that it had discouraged membership in a labor organization by discharging and refusing to rehire 17 employees, and by demoting 1, in violation of section 8(3), 29 U.S.C.A. § 158(3); and that it had dominated and interfered with and contributed support to a labor organization of its employees, known as the Allied Chemical Workers' Association, in violation of section 8(2), 29 U.S.C.A. § 158(2).

After hearings before a Trial Examiner in Los Angeles, the case was removed to the Board proper, which made findings of fact to the effect that:

(1) The respondent ships more than 90 percent of its products in interstate commerce, that it is one of the three largest potash producers in the United States and one of the two largest borax producers in the world.

(2) That on one occasion respondent discharged 4 employees by reason of their union activity in the Borax and Potash Workers' local; on a second occasion it discharged 3 and demoted 1 for the same cause; on a third, it discharged 7 employees, members of the negotiating committee of the Allied Chemical Workers' Association, for the reason that these 7 had protested the discharge of the A. F. of L. men; and on a fourth occasion it discharged 3 more members of the Union for union activity.

(3) That the respondent had dominated, interfered with and given support to the Allied Chemical Workers' Association, an organization of its employees.

(4) That all these actions on the part of respondent tended to lead to a labor dispute interfering with and burdening interstate commerce.

From these findings the Board concluded that respondent was guilty of unfair labor practices within section 8(1), (2) and (3) of the Act, 29 U.S.C.A. § 158(1-3). It ordered the respondent to cease and desist:

1. From interfering with, restraining or coercing its employees in the exercise of their rights to self organization for the purpose of collective bargaining.

2. From discouraging membership in Borax and Potash Workers' local by dis-

charging, refusing to reinstate, or demoting any of its employees.

3. From dominating or interfering with the Allied Chemical Workers' Association and from contributing support thereto.

The following affirmative action was ordered:

1. Offer full reinstatement to the 17 employees who were discharged and to the 1 who was demoted by reason of union activity.

2. Make whole the said employees for any losses of pay between the time of discharge or demotion to the date of offer of reinstatement, less what each might have earned in the meantime.

3. Withdraw all recognition from the Allied Chemical Workers' Association as representative of any of its employees for collective bargaining purposes and "disestablish the Allied Chemical Workers' Association as such representative".

4. Post conspicuous notices indicating compliance with the foregoing orders.

The case is before us on the Board's petition for enforcement, the respondent resisting such petition on the ground that the evidence fails to support the findings of a burdening or obstruction of interstate commerce, a domination of the alleged company union, the Allied Chemical Workers' Association, and (in part) the alleged discriminatory discharges. By leave of court the Allied Chemical Workers' Association has filed a brief here challenging the Board's finding of company domination of the intervenor and the order directing non-recognition and disestablishment. Pending before us also is a motion by the respondent to adduce additional evidence and a preliminary issue (on which the parties have submitted supplemental briefs) as to whether respondent was denied due process of law in the Board proceedings. We will consider these procedural matters first.

### Respondent's Claim of Denial of Due Process.

Respondent claims that it was denied the substance of notice and hearing as required by the guarantee of due process laid down in the Fifth Amendment U.S.C.A. Const. Amend. 5. Our attention is called to the recent case of Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. ——, April 25, 1938, rehearing denied May 31, 1938, 58 S.Ct. 999, 82 L.Ed. ——, wherein was reiterated the principle that while mere form is not important, a litigant in any sort of a tribunal or administrative body, must be fairly given an opportunity to present his case,—by reasonable notice of what charges he will have to meet and by opportunity to present both evidence and argument in meeting them.

There is no record of objection made on this ground to the Board and hence we are not required to review the contention. Sec. 10e. Nevertheless, because we believe that had the matter been in our discretion we would have provided a longer notice of the hearings, we give it consideration.

The claim of lack of notice is grounded upon the theory that respondent was afforded but 6 days to present evidence bearing upon the discharge of 17 men, the gathering of which evidence required repeated journeys from Los Angeles, the seat of the hearing, to Trona, almost 200 miles away. And, respondent asserts, its requests for continuances were arbitrarily denied.

The facts are these. Three separate complaints were filed by the Board against respondent in this case. Each charged violation of the Act by discriminatory discharges and by domination of the Allied Chemical Workers' Association. The only substantial difference among the three was in the names of employees discharged and the particular circumstances of the discharge. The first complaint was filed April 24, 1936, and alleged the discriminatory discharge of 4 employees because of membership in the Union and respondent's unlawful domination of the Allied Chemical Workers' Association. Respondent answered on May 1, 1936, and a hearing was held before the Trial Examiner and lasted several weeks concluding on June 3, 1936. Respondent makes no claim that it lacked notice and opportunity to present its defense on the hearing on this first complaint.

On July 6, 1936, the Trial Examiner found that respondent had engaged in the unfair practices charged, but that it was not subject to the Act, and recommended that the complaint be dismissed.

On October 2, 1936, a supplemental complaint was filed repeating the allegations of respondent's domination of the Allied Chemical Workers' Association, and alleging discriminatory discharge of 4 Union members, discriminatory demotion of 1 Union man, and the discharge of 7 Allied Chemical Workers' Association men for protesting the discharge of the Union members. Notice of hearing on October

15 was given on October 8th. Thus respondent had 8 days to prepare its defense to charges of unlawful discharge of 12 men. The 12 individual cases were closely interrelated and the charges were substantially similar to those preferred in the earlier complaint.

On October 9, a third complaint was filed, alleging the discriminatory discharge of 5 more Union members, the charge being incorporated in the previous one noticed for hearing on October 15. This allowed respondent 6 days to prepare for meeting charges as to 5 men.

Two days before the October 15 hearing, the firm of counsel selected by the respondent wired the Board in Washington asking a 7-day continuance, stating that they did not have sufficient time to prepare the cases and that they were engaged in the trial of another case on the morning of the hearing. The request was denied.

On October 15, the morning of the hearing, respondent's attorney asked a continuance of 24 hours on the ground that he had to appear in the Federal District Court on another matter. The motion for continuance was denied by the Trial Examiner with the result that for one hour, more or less, the Board's case went on in the absence of any attorney for the respondent.

■ Regarding the other engagement, at the opening of the hearing, of the member of the law firm selected by the Company there is no showing that he had any special knowledge of the case which made him the only attorney available to the Company. The Act makes it clear that the proceedings must proceed with the utmost dispatch. When the Company received the complaint and notice of trial and chose the particular firm of lawyers to represent it, it should have secured one of their staff of attorneys or some other counsel who was free from other engagements to undertake the case with the instant attention contemplated by the Congress.

■ With regard to the claim of lack of time to prepare for the hearing, there is no showing of prejudice. The Company does not contend that any relevant evidence was not adduced, or that any witness of the Board was not at one time or another fully cross-examined by the Company, and recalled for that purpose if requested, or that any witness desired by the Company was not heard. Whatever may have been the lack of preparation before the hearing, there is no claim that as the proceedings developed this difficulty had not disappeared.

■ The denial of the motion to postpone the *commencement* of the hearing may be necessitated by the presence of the assembled witnesses of the Board. It is quite different from a refusal to continue it *after* these witnesses have been heard, either to have some recalled for further cross-examination or to produce others. Such later motion and its denial are not claimed.

■■ In the absence of a showing of *prejudicial* error in the exercise of the Board's discretion, we cannot set aside the Board's findings. Nor can we hold as a matter of law that the statute itself violates due process in providing a five day notice and the utmost dispatch in proceedings of this character.

At the October 15 hearing before the Trial Examiner, the record of the first hearing was incorporated. The hearing closed without any request for argument by the Company. Five days later, on October 20, the case was transferred to the Board. On July 28, 1937, the order here sought to be enforced was issued by the Board.

■ Under the Board's rules, Section 36 and Section 38, it is optional whether there be argument or briefing after the hearing is concluded before the Examiner. The case rested with the Board for nine months. It is not contended that any request for argument or briefing was made by the Company and denied by the Board. The several complaints stated the charges with definiteness and precision. It is not claimed that the Company was not fully advised of the Board's contentions or that its order is other than for a remedy warranted by the facts charged. For all the record shows, the Company did not care to make any argument when the case was heard and closed by the Examiner, and the Board, not being advised of a desire to reopen the case for argument, did not do so of its own motion. The Board had acquired jurisdiction and the claimed lack of due process thereafter must be affirmatively shown.

We find the respondent was in no wise denied due process of law in the proceedings herein. Morgan v. United States, supra; National Labor Relations Board v. Mackay Radio & Tel. Co., 58 S.Ct. 904, 82 L.Ed. ——, May 16, 1938; National Labor Relations Board v. Biles-Coleman L. Co., 9 Cir., 98 F.2d 16, June 23, 1938.

Respondent's Motion to Adduce Additional Evidence.

■ The respondent has moved for permission to adduce additional evidence showing that the 17 men found by the Board to have been discharged in violation of the Act, and to whom respondent was ordered to offer reinstatement and back pay, have signed releases to the respondent acknowledging receipt of payments of money in full settlement of their claims for back pay. The evidence is not "material" within section 10(e), 29 U.S. C.A. § 160(e). It is concerned with compliance with the Board's order, not the propriety of the order. We are concerned only with the latter. The motion is denied. National Labor Relations Board v. Oregon Worsted Co., 9 Cir., 94 F.2d 671, 672; National Labor Relations Board v. Biles-Coleman L. Co., 9 Cir., 96 F.2d 197, 198; National Labor Relations Board v. Remington Rand, 2 Cir., 94 F.2d 862, 869, 870.

The Findings and Order of the Board.

1. *Opposition to Union activity and discriminatory discharges.* The Board's finding that respondent violated section 8 (1) and (3), 29 US.C.A. § 158(1, 3), by opposition to the Union, expressed chiefly in the discriminatory discharge of 17 men and the demotion of 1, is clearly supported by the evidence. Aside from the Allied Chemical Workers' Association, later considered, there was no labor organization among the some 900 employees of the Trona plant until March of 1936, when the complaining Union here, Borax and Potash Workers' local 20181, was organized and became affiliated with the American Federation of Labor. The preorganization campaign as well as the progress of the Union after its formation met with hostility from the respondent. Meetings were required to be held outside of Trona, a company town. Union notices were not permitted to be placed on the Company's billboards. Meanwhile the Allied Chemical Workers' Association, which concededly had started out as a company dominated union, was permitted the use of company property for its meetings and the billboards for its notices. In March, 4 of respondent's employees, charter members and officers of the Union, and active in its formation, were discharged.

There followed at this stage the Board's first complaint and hearing before the Trial Examiner who, on July 6, 1936, issued an intermediate report recommending dismissal of the complaint because he considered respondent was not in interstate commerce. Apparently emboldened by this temporary victory, respondent in August, 1936, discharged 3 active Union members and demoted one J. L. Ivers, recording secretary of the Union, from a position as foreman at 80 cents per hour to general helper at 50 cents.

On August 11, at a meeting of the joint negotiating committee of the respondent and the Allied Chemical Workers' Association, 7 Association members of the committee protested the 3 Union discharges and the demotion of Ivers. Within a week, each of these Allied Chemical Workers' Association protestants was discharged. There followed shortly thereafter the discharge of 3 more members of the Union. Thenceforward all activity on behalf of the Union was driven underground.

With the exception of the case of J. L. Ivers, the respondent does not seriously contest in this court the Board's findings as to the nature of these discharges. The record shows that the Board gave painstaking and detailed consideration to the circumstances of each case. Its determination that each discharge was occasioned by Union activity, rather than by the rather vague and general reasons assigned by the respondent at the hearing below, is amply supported by the evidence.

■ We consider Ivers separately, because the Board's finding as to the nature of his demotion is affirmatively resisted by the respondent in its brief here. Ivers was not located for the hearing before the Trial Examiner, hence some of the evidence was hearsay. This is no basis for objection to the finding. Section 10(b), 29 U.S.C.A. § 160(b). The evidence shows that Ivers' work as foreman at 80 cents per hour had been satisfactory and not complained of by the respondent. He was an active officer of the Union. On August 1, 1936, as he was leaving for a 30-day vacation, he was told that upon his return he might have a job as general helper at 50 cents per hour. Considering this the equivalent of a discharge, he left and did not return. His job as foreman was filled by a less experienced man. On August 11, 1936, the demotion was protested at the Allied Chemical Workers' Association joint committee meeting and the respondent gave no reason for the demotion. There is clearly sufficient proof here to

warrant the Board's finding that the demotion was motivated by Ivers' Union activity.

■ We uphold, therefore, the Board's finding that respondent interfered with and restrained the employees in the exercise of their collective bargaining rights and that it discouraged membership in the Borax and Potash Workers' Union by discrimination in regard to hire or tenure of employment, in flagrant disregard and violation of section 8 (1) and (3) of the Act, 29 U.S.C.A. § 158(1, 3).

2. *The finding of domination and support of the Allied Chemical Workers' Association.* Both the respondent and the intervening Allied Chemical Workers' Association vigorously contest in this court the Board's finding of company domination of the Association and the order of disestablishment based thereon.

The finding is supported by the evidence. It is conceded that the Association was originated by respondent's general manager in 1934. Petitions were circulated among the employees by the respondent and about 200 employees signed up. The constitution permitted membership of any employee except staff employees. Supervisory non-staff men were elected to the governing positions. Every member was required to take an oath to refrain from affiliation with any organization which might interfere with the Association activities. Membership applications were obtainable from the timekeeper. Plant facilities were freely accorded the Association for all its functions.

It is with this background that we must evaluate the contention that, regardless of the conceded original domination by the company, at all times since the enactment of the National Labor Relations Act, the Allied Chemical Workers' Association has been a bona fide labor organization free from domination, interference, or support by the respondent. That the Association did make some attempts to free itself, there is no doubt. Thus early in 1936, the constitution was amended to permit affiliation with other labor organizations by majority vote instead of two-thirds as before. A second amendment excluded employees receiving over $200 per month from participation in Association voting.

The finding that the Allied Chemical Workers' Association did not succeed in freeing itself from employer domination is supported by the evidence. For more than a year following passage of the Act, the Association made some attempts to gain better wages and to relieve the unsatisfactory housing situation in Trona. These moves were for the most part fruitless until concessions on both matters were made by respondent in April, 1936, the high point of the Borax and Potash Workers' Union organizing campaign. The Board justly inferred that such success, coming after a long period of chronic inability to bargain successfully was due to respondent's desire to head off the American Federation of Labor union rather than to any pressure from the Association.

In February of that same year the Allied Chemical Workers' Association had written an open letter to respondent's manager demonstrating its own futility as a bargaining agency, and practically describing itself as a creature of the respondent. Speaking of the housing and wage situations, the letter stated:

"The housing action appears very unpromising. In the wage adjustment it now rests entirely with the employer and management whether our six months hard work and sleepless nights have been spent in vain. If so, any further nerve racking efforts to build up by honest and earnest effort, the *employer's own wall of protection* against outside injurious connections, is waste of time and valuable energy." (Italics supplied).

Significant also is the fact that no regular avenues or mechanics of collective bargaining between the Association and respondent were in existence until February of 1936, (the period in which the Borax and Potash Workers' campaign was under way). At that time, pursuant to a suggestion from respondent, a joint committee to consider grievances was set up, comprising representatives of both the employer and the Allied Chemical Workers' Association. One of the committee representatives on behalf of the employer, Martyn Porter, a system analyst in manager Burke's office, thus described the role of the joint committee at its first meeting:

"As Mr. Burke explained it to me, it did not have any power of definite decision. It was to formulate recommendations to the management's office. It required the management's office approval to put the recommendations into effect, or to refer them back for further consideration."

This is not "collective bargaining" as that term is commonly understood.

The most potent evidence of employer domination of the Allied Chemical Workers' Association, is the discharge of 7 Association members of the joint committee because they protested the discharge of Union men. Respondent and the intervener cite this instance as proof of the Association's freedom from such domination. Precisely the opposite is the case. The protest by the 7 committee members shows an attempt by the 7 and, through them, the Association, to be free of employer control. The discharge shows that such freedom was not obtained. A discriminatory discharge may just as well be directed toward *domination* of a labor organization as toward a dissolution or driving out of a labor organization. The distinction is clearly brought out in the case at bar. Both Union men and Association men were discharged by this respondent. After such discharges the Union was driven out or underground, but the Association continued to function with the permission and facilities of the employer. Clearly the discharges were motivated by a desire to destroy the Union and to *destroy the militancy and independence of the Association, but not the Association itself.* The Association was to remain and it was to remain subservient. What is domination and interference, if this is not?

We conclude, therefore, that the Board's finding of interference with and domination of the Allied Chemical Workers' Association by the respondent in violation of section 8(2), 29 U.S.C.A. § 158 (2), is supported by the evidence.

*3. The effect on interstate commerce.* Respondent contends that the Board was without authority to make any order in this case because the unfair labor practices complained of are not shown to have resulted in a strike or in any other impairment of respondent's interstate commerce operations. The argument is totally fallacious. The Act is designed primarily as a preventive measure. Actual stoppage or impairment of commerce is not required before the Board is authorized to act. No strike or diminution of commerce was shown to be present in the case of National Labor Relations Board v. Jones & Laughlin Steel Corporation, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352. Congress has declared the practices which have the intent or necessary effect of impairing, burdening, or obstructing commerce. Section 1, 29 U.S.C.A. § 151. It has prohibited these practices. Section 8, 29 U.S.C.A. § 158. The determination is conclusive. Once the practices are shown to take place in an industry whose products enter interstate commerce in substantial degree, the Board is empowered to correct them. Cf. Santa Cruz Fruit Packing Co. v. National Labor Relations Board, 58 S.Ct. 656, 82 L.Ed. 954.

The Board's findings being supported by evidence, all its corrective orders in this case are warranted. We understand the respondent does not complain of the cease and desist provisions. The affirmative requirement of withdrawal of recognition from and disestablishment of the Allied Chemical Workers' Association is a remedy which the Board is authorized to invoke upon a valid finding of domination. Section 10(c), 29 U.S.C.A. § 160(c). National Labor Relations Board v. Pennsylvania Greyhound Lines, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307; National Labor Relations Board v. Pacific Greyhound Lines, 58 S.Ct. 577, 82 L.Ed. 838. The order of reinstatement and back pay is legitimate and within the competence of the Board to issue. National Labor Relations Board v. Jones & Laughlin Corporation, supra; National Labor Relations Board v. Mackay Radio & Tel. Co., supra.

The Board's petition for enforcement of its order will be granted to the full extent of the order.