228

## NATIONAL LABOR RELATIONS BOARD v. WAPLES–PLATTER CO.

### No. 10769.

Circuit Court of Appeals, Fifth Circuit.

Feb. 3, 1944.

Rehearing Denied March 1, 1944.

Robert B. Watts, Gen. Counsel, and Louis Libbin, Principal Atty., National Labor Relations Board, both of Washington, D. C., for petitioner.

Sidney L. Samuels, of Fort Worth, Tex., for respondent.

Before HUTCHESON, McCORD, and LEE, Circuit Judges.

McCORD, Circuit Judge.

National Labor Relations Board petitions for the enforcement of its order issued May 27, 1943, against Waples-Platter Company, Inc., pursuant to Section 10(c) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 151 et seq.

Waples-Platter Company is a Texas corporation, having its principal office at Fort Worth, and is engaged in the purchase, sale and distribution of food products. It maintains branch offices and warehouses in Clovis, New Mexico, and Ada, Oklahoma, as well as several other Texas cities and towns; it is also engaged in the manufacture and sale of wooden boxes in Fort Worth, the majority of these boxes being manufactured for the government for war purposes. The box factory and the warehouse located at Fort Worth are the only establishments involved in this proceeding.

No jurisdictional question is raised, and it is without dispute that the Waples-Platter corporation was engaged in interstate commerce.

Charges were filed against the Corporation by District 50, United Mine Workers of America, and by Warehouse & Distribution Workers Union Local 220, and by order of the Board the two cases were consolidated and tried together. The gist of the charges were that the Corporation had been and was guilty of unfair labor practices.

In July 1942, Local 220 initiated a drive among Corporation's warehouse employees to organize a union, and approximately two months later District 50 undertook to organize the employees in Corporation's box factory into a union. An election was held to ascertain whether the Warehouse & Distribution Workers Union Local 220 should become the exclusive bargaining agent for the warehouse workers and the truckers who were employees of the Corporation. In this election the union lost. The trial examiner found from the evidence that Corporation, through one of its officers, by posting a notice, interfered with, restrained and coerced its employees in this election. The Board approved this finding and set aside the election, but further found that "in view of the length of time which has elapsed since the election, we shall dismiss the petition for investigation and certification without prejudice to the right of the union to file a new petition if it so desires."

The Board further found that officers of the Corporation had attempted to coerce, intimidate, and otherwise influence

its employees in and about the organization of the two unions. It further found that the Corporation, through certain of its officers, had discriminated against two of its employees by transferring them to undesirable positions in order to discourage membership in District 50 and Local 220, thereby violating Section 8 (3) of the Act and ordered Corporation to cease and desist as to its unfair labor practices and to "offer to Roy Mack Hilburn and Charles M. Gilbert immediate and full reinstatement to their former or substantially equivalent positions at Fort Worth, Texas, without prejudice to their seniority or other rights and privileges", and further to post notices, etc.

■ We are of opinion that the Board was warranted in finding from the evidence adduced that certain of the Corporation's officers and foremen had intermeddled with and attempted to influence the employees at the time they sought to organize or recruit the two unions; the two employees who were leaders in the union movement were also subject to this interference and certain of the Corporation's officers attempted to pursuade them against the organization of the unions.

Roy Mack Hilburn was employed in the box factory and was in charge of one of the edger machines; he was a good worker and stood well with his foreman and officers; he was very active in seeking out his fellow employees and attempting to have them sign up with one of the unions. On a day when Hilburn appeared for work his foreman ordered him to report at a garage which was a part of the plant, advising him at the time that he was ahead of his work on the edger and that the garage needed help. Hilburn had some experience as a garage worker, but he protested leaving his job. The garage was about one hundred yards from the box factory. Moreover, it was a place where the employees frequented and if Hilburn desired to contact his fellow employees at lunch time he could from that vantage point readily and easily contact them; Hilburn's brother worked at this garage and was also a union man, and is at work there at the present time. Other of the employees had on occasion been transferred from the box factory to this garage when men were needed there; many of the men wore union buttons as they went about their work; the hours and pay at the garage were exactly the same as paid to Hilburn at the box factory. Hilburn heard that his edger was being run while he worked at the garage; he became incensed and sought out his foreman and insisted that he be put back to work on the edger; the foreman told him that he was needed at the garage and that the transfer was temporary; Hilburn informed his foreman that the work at the garage was light and still insisted that he go back on the edger and refused and declined to go back to the garage, but kept insisting that he go back to the edger; thereupon he was given his pay check by the foreman.

Charles M. Gilbert was an experienced truck driver and was in the employ of the Corporation for several years. His headquarters was in Fort Worth and he drove laden trucks out in to the country and other cities and towns which kept him away from Fort Worth days at a time, but he owned a home and resided at Fort Worth. He was a good worker and an experienced truck driver. On one of his trips and after driving a truck to several points in Texas, he finally drove into Memphis, Texas. There one of the Corporation's officers informed him that he was directed to remain at Memphis and take charge of and drive a six wheel truck for his company from that place. He refused to remain at Memphis and called up one of his superior officers who insisted that he remain at Memphis, advising Gilbert that the driver who was able to drive and handle a six wheel truck had been inducted into the army and no one was available to drive such a truck at Memphis. Gilbert remained there until Saturday and then returned to Fort Worth at the expense of his company; on Monday he did not return to Memphis, but interviewed his superior and informed him again that he could not return to Memphis; his superior appealed to him to return there and again told him that it was only a temporary change until another experienced driver could be secured. Thereupon Gilbert asked to be returned to Fort Worth; he was told that he was needed at Memphis, and when told again to return there he refused and replied that he guessed he was fired. His superior told him emphatically he was not fired, but again insisted that he should return to Memphis. Gilbert then quit his position.

We are unwilling to hold, after considering all the evidence, that these two

employees, Hilburn and Gilbert, should be paid for the time they left the service of the Corporation. They were not discharged; they were transferred to positions where the working conditions were the same or just as good as at the places they originally worked; the hours and the pay were exactly the same, and they were informed that the transfers were only temporary. They were not constructively discharged. They elected to quit the service of the Corporation and at a time when vacancies were occurring and when labor was sorely needed. A vacancy occurred at the garage for the reason a worker there had been inducted into the armed forces. Hilburn, by no inference to be drawn from the evidence, can be said to have been discharged. He was angry and questioned the honesty of his superintendent in asking him to work at the garage, but his superintendent did not reply in kind but told him the change was only for a few days until a man could be secured to work there, that Hilburn was needed at the garage. Hilburn replied that the work there was light and he was again told that the pay would be exactly the same, but Hilburn declined and refused to work there any longer. He does not deny that he waited for his superintendent at the noon hour and told him he was going to quit. He went into the office and drew his pay and left the service of his own accord.

Since Hilburn and Gilbert were of the employees that the officers sought to influence when they were organizing the union, they should be tendered their former or substantially equivalent positions, with full seniority rights, etc., but without compensation for the time they voluntarily left the service of the Corporation.

We have carefully measured and considered every phase of the evidence in this case and we are unable to find citation of authority which, when applied to the evidence here, would warrant payment of compensation to these employees. We agree with the dissenting member of the Board that they were not entitled to compensation. Manifestly, the evidence here differentiates this case from the following cited cases: N. L. R. B. v. American Potash & Chemical Corporation, 9 Cir., 98 F.2d 488; N. L. R. B. v. Viking Pump Company, 8 Cir., 113 F.2d 759; N. L. R. B. v. Star Publishing Company, 9 Cir., 97 F.2d 465.

Except as the order relates to payment of compensation to Hilburn and Gilbert, it is in all things enforced.

Modified and enforced.