**MODERN MOTORS, Inc. v. NATIONAL LA-BOR RELATIONS BOARD.**

**No. 14476.**

United States Court of Appeals
Eighth Circuit.

Sept. 16, 1952.

Robert A. Brown, Jr., St. Joseph, Mo. (Brown, Douglas & Brown, St. Joseph, Mo., on the brief), for petitioner.

Irving M. Herman, Washington, D. C. (George J. Bott, General Counsel, David P. Findling, Associate General Counsel, A. Norman Somers, Asst. General Counsel, and Bernard Dunau, all of Washington, D. C., on the brief), for respondent.

Before SANBORN, JOHNSEN and COLLET, Circuit Judges.

JOHNSEN, Circuit Judge.

This case, like National Labor Relations Board v. J. I. Case Company, Bettendorf Works, 8 Cir., 198 F.2d 919, concurrently decided, presents a situation involving concerted activities by employees for mutual aid or protection, discharges made on account thereof, violations of section 8(a) (1) and (3) of the Act, 29 U.S.C.A. § 158 (a) (1, 3) found in relation thereto, and cease and desist provisions entered as to each of these subsections, with requirements also of reinstatement and backpay.

The matter is before us on a petition by the employer to have the Board's order set aside and a counter-request by the Board to have the order enforced.

The concerted activities involved were prompted by the employer's failure at Christmas-time in 1949 to pay an employees' bonus, as had been done during a number of preceding years. On the morning following the Christmas holiday, eleven of the employees in the employer's shop insisted upon an opportunity to discuss the matter with the president of the Company. Two of their number acted as spokesmen for the group. The president declared that the Company could not afford to pay a

bonus that year and directed all of them to either go back to work or leave the premises. The two spokesmen replied that they felt that they were entitled to seek legal advice. They left the shop and went downtown to find and consult with a lawyer. They suggested to the other nine that they not go to work until their return. When the president came out into the shop a few minutes later and learned that the two spokesmen had left the premises, he announced that they were fired and ordered the rest to "go to work or get your tools and leave the building." All of the nine, except one, returned to their jobs. The latter stated that he was not going to work until the two spokesmen returned. When the two spokesmen came back to the shop around noon, they and the one employee who had not returned to his job were discharged.

There had been up to that time no union organization or union activity in the shop. The three discharged employees however immediately went out and sought membership in a union existing in the community and got other employees of the shop to do likewise. Hostility and interference by the employer with these unionization efforts was charged in an amendment made to the complaint, but this charge was found by the Board to be without foundation in fact and the charge was ordered dismissed.

■ On the basis of what has been said in the J. I. Case Company case, supra, the Board's finding of violation of section 8 (a) (1), as involving interference with legal concerted activities for mutual aid or protection, was proper. The object, scope, attributes and consequences of what the three discharged employees did cannot in the situation be declared to have been beyond the bounds of the statute. As the Board held, the matter in all its incidents had amounted to nothing more on the part of the employees than a stopping of work, the concerted presenting of a grievance concerning conditions of employment and a reasonable attempt to get the grievance solved. Like in Case Company, the cease and desist provisions of paragraph 1(b) of the Board's order and the reinstate-

ment and backpay requirements on the basis thereof are therefore not entitled to be set aside but to be enforced.

■ However, as in Case Company, it does not seem to us that the evidence here affords any basis for a finding of violation of section 8(a) (3) as a fact, on the premise that the discharges made had or reasonably could be said in the situation to be likely to have " 'the proximate and predictable effect of * * * discouraging membership in a labor organization.' " Whatever might be argued to be the right of the Board to evaluate in an equivocal situation the tendency of such action generally, on the basis of its experience, there could not be said, we think, to exist any rational basis for such an abstract inference in the present situation of specific, unequivocal, demonstrative proof of actual contrary result. Here, the Board's own evidence showed that the effect of the employer's action had been, not to discourage membership in a labor organization, but instead to prompt it. The three discharged employees, as stated above, immediately joined a union, as did other employees in the plant, and so, where no union and union membership had previously existed, these things proximately came to obtain. The employer's action was not found to have had any intention in fact in relation to unionism at the time, and the subsequent unionization activity of the employees was not attended by any effort on the part of the employer to thwart. That which directly stimulated union interest and affiliation under these conditions could hardly realistically be appraised as "discouraging membership in a labor organization."

Other questions have been attempted to be raised by the employer, which are wholly without merit and which it is accordingly unnecessary to discuss.

As in the J. I. Case Company case, enforcement of all of the provisions of the Board's order will be granted except paragraph 1(a), with its restraints based on violation having occurred of section 8(a) (3) of the Act, as to which paragraph enforcement will be denied.