**DEEPFREEZE APPLIANCE DIVISION, MOTOR PRODUCTS CORP.**

v.

**NATIONAL LABOR RELATIONS BOARD.**

No. 10997.

United States Court of Appeals Seventh Circuit.

March 29, 1954.

Edward H. Hatton, Edward E. Lynn, Chicago, Ill., Johnston, Thompson, Raymond & Mayer, Chicago, Ill., of counsel, for petitioner.

David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Frederick U. Reel, George J. Bott, Gen. Counsel, Wiley M. Craft, Attys., National Labor Relations Board, Washington, D. C., for respondent.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Petitioner seeks to set aside and respondent to enforce an order of the National Labor Relations Board entered in pursuance of a decision of a three-member panel, rejecting the trial examiner's report, finding that petitioner's employee

Ower had been discriminatorily discharged, within the meaning of Sections 8(a) (3) and 8(a) (1) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 158(a) (1, 3), and 29 U.S.C.A. § 160(f), and directing his reinstatement.

The complaint, filed in pursuance of a charge made by Ower, averred in substance that on November 21, 1952, the company, acting through its director of industrial relations, Greene, discriminatorily discharged Ower. Petitioner admitted that it was subject to the Act and that it had terminated Ower's employment but denied that it had done so discriminatorily or that it had engaged in any unfair labor practice. Having heard the evidence, the examiner filed an intermediate report recommending that the complaint be dismissed. Upon the general counsel's exceptions thereto, the three-member panel of the Board, without additional evidence, disapproved the report and entered the order here involved. Member Peterson dissented.

Petitioner is engaged in the manufacture of home appliances and certain products for the national defense. As the examiner found, its history of relationship with the several unions in its plant at various times has been one "wholly unmarked by any display of anti-union bias." Contests between different unions had arisen from time to time, but these were laid to rest when, on August 15, 1952, the United Automobile, Aircraft and Agricultural Implement Workers, a CIO union, hereinafter referred to as UAW, obtained a majority of the votes cast in a representation election of maintenance and production employees, in a contest between that organization and the International Association of Machinists, an AFL association, hereinafter referred to as IAM. Following the election, UAW was certified as the representative and on September 2, 1952, entered into an interim collective bargaining agreement with the company, which continued in effect until February 7, 1953, when a final agreement was executed. In the five-months period between September 2, 1952 and February 7, 1953, petitioner and UAW's representatives were engaged almost continuously in collective bargaining, negotiating the final agreement and hearing various grievances.

Ower had been employed from January 15, 1951, as a maintenance machinist in the tool and die department. In 1952, he was reclassified as a tool and die maker. After the election he authorized petitioner to check off to UAW his dues in that union. He had formerly been a steward of IAM. Apparently his sympathies were still with the IAM, despite the fact that he had consented to have his dues checked off as a member of UAW. There was some discord among the employees, even though UAW had won the election, and this in turn had led to discussion in the plant during working time. As a result, as the examiner found, Farrell, the foreman, about November 7, 1952, called together the eight or ten men employed in the tool room and told them that there should be no more time spent on caucusing or union activities during working hours, and warned them specifically about loitering or wandering around the building in violation of the contract between the company and UAW and the plant rules. Some two weeks later, on November 20, 1952, Ower drafted petitions which he described as calling for a new election or for decertification of the UAW as collective bargaining agent. These he prepared partly on company time. After completing them he distributed some of them, on company time, among fellow-employees in the tool room. He admitted that he had at that time urgent work at his bench, to be completed as soon as possible, for the aircraft engine division. His absence from work was unauthorized by his superior, and his activities in the respects mentioned were unknown to petitioner at the time of their occurrence.

At a grievance meeting held that day or the day following, the UAW bargaining committee complained about Ower's activities and said that something should

be done because he was circulating petitions seeking to start another union, on company time, and that if something was not done a riot might occur. UAW's representative asserted that Ower should be discharged because he had violated the rules of the company and that he was no better than the stewards, who had to abide by the rules and who had to get permission if they left their working places. Mr. Greene commented that "we just can't discharge a man that quick" but said that he would "check into it further and find out" what the facts were. The meeting adjourned without final action, but Farrell and Greene spent some time going over the situation, and, after considering the fact that Ower had left his work and had loitered and wandered about the plant, finally tentatively agreed that he should be discharged. However, Greene desired "to sleep" on the proposition. The next day Greene called Ower and Farrell into his office and informed Ower that he was being discharged because of his loitering and wandering around the plant in violation of a previous warning, as well as for poor workmanship. Greene testified that Ower admitted that he had wandered about the plant and that he had received the prior warning. The notice of discharge mentioned two grounds for the action, one, loitering and wandering, after having been previously warned, and, two, poor workmanship. He was advised that he might appeal from his discharge through the grievance procedure.

The existing contract between the company and the UAW provided that any employee should have "at least one warning notice of dissatisfaction." Neither the contract nor the rule stated whether this warning should be oral or written. The evidence showed that both forms had been used in the past. The company rules stated that petitioner had no intention to impose unreasonable rules or regulations, yet that certain regulations must be observed. It was provided that deliberate violation of any of the rules would be cause for discharge. One of the regulations forbade "wandering about the plant during working hours."

The facts thus far recited are clearly sustained by the record. The examiner, after hearing the evidence, exonerated Ower from the charge of defective workmanship and then proceeded to determine whether he had been discharged in violation of the Act. He found that the tool room employees had been warned by Farrell, as we have stated; that the oral notice constituted a sufficient warning to Ower to refrain from violating company rules; that loitering or wandering around the plant was prohibited by company rules and regulations and was cause for discharge. He found no bias or prejudice on the part of the petitioner against either the UAW or the IAM but said that the controversy between the two "left the company in the middle." He commented that "working time is for work" and found that Ower had prepared petitions and papers partly on his own time and partly on company time, had circulated them on company time, without permission to leave his bench to do so, and that he had violated the rule about wandering about the plant during working hours. Consequently he concluded that Ower had been discharged for cause, after warning, and recommended that the complaint be dismissed. The majority of the panel, on the contrary, found that the company had not followed contract procedure in discharging Ower, and that he had been discharged because of his anti-UAW activities and not for the reasons found by the examiner.

In this situation we have been confronted with the necessity of determining whether the general counsel of the Board has affirmatively proved by substantial evidence on the record as a whole that petitioner was discharged solely because of his anti-UAW activities, entailing, of course, a careful examination of the record. It is apparent that the examiner and one member of the Board found that Ower had been discharged without violation of the law, whereas two members of the Board concluded that he had been discriminatorily

discharged. Consequently we have found it necessary to determine which of these two findings is supported by substantial evidence on the record as a whole. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. Bearing in mind that frequently the most telling part of evidence on the issue of veracity is the bearing, the mien, the manner and the delivery of the witness, that these are usually the dominating factors and that, as has been said, "we are not to be reluctant to insist that an examiner's findings on veracity must not be overruled without a very substantial preponderance in the testimony". National Labor Relations Board v. Universal Camera Corp., 2 Cir., 190 F.2d 429, 430, we have examined the entire record. As a result, we conclude that the findings of the examiner were supported by the record as a whole before him, that not only is there no preponderance of the evidence in favor of the complaint but that the Board, wholly without justification in the evidence, has ignored the examiner's finding and in effect reversed it. The record is undisputed that petitioner is wholly free of any unfavorable attitude toward any labor union and has dealt fairly and freely with the different unions with whom it has come in contact in its business experience. Indeed, the Board itself found that "respondent Deepfreeze discharged Ower not to satisfy any illegal purpose of its own * * *". In spite of this conclusion, however, the Board apparently was misled into a collateral inquiry wholly irrelevant to the actual facts. It inferred that the company, at the insistence of UAW, had discharged Ower because he was engaged in union activities. This was contrary to the examiner's express findings of fact and ignores entirely the convincing character of the evidence to the contrary. It is clear from the record that Greene refused to discharge Ower at the insistence of the UAW and did not discharge him until learning that the employees in the tool room had been warned specifically that they should not be wandering or loitering around the workroom, on company time, for any purpose. Ower's own statement is that he had left his work bench without permission of a superior. He had visited with other tool makers and submitted to them petitions that he had drawn partly on company time. These activities were clearly within the terms, loitering and wandering about the tool room, forbidden by the company rules. He was notified that this was one of the reasons for his discharge and that, if he was not satisfied, he could appeal the matter by way of grievance. This he failed to do.

■ The Board seemed to think that the fact that the warning was not in written form was fatal to its validity, yet the rules of the company and the provisions of the contract included no stipulation that the warning should be in writing. In the absence of any requirement of written notice, it can not be said that oral notice to the eight or ten men in the tool room was ineffective. Indeed, it is not perceived how specific notice to each of the eight or ten men could have been any more significant than notice to them congregated together in one group addressed by the foreman. We agree with the examiner and the dissenting member of the Board that the warning given was sufficient under the contract and the rules of the company.

It is perfectly clear that Ower did not exhibit the proper regard for his employer's rights, for the contract or for the rules of the company. He failed to recognize that cooperation on the part of the employees and the company are essential to the healthful promotion of the business in which both are engaged and that all his working time belonged to the company. He wrongfully deprived his employer of part of his time, in wandering and loitering about during working hours after warning. We conclude that the examiner was correct in his findings and conclusions and that the general counsel failed entirely to sustain the burden of proving improper action

**462**

upon the part of the petitioner. The examiner saw the witnesses; he observed their manner upon the stand; he heard their stories; he passed upon their creditability and in the end found and determined that the motivation of the company was entirely free of anything in violation of the Act. We agree.

Accordingly the order is set aside and the petition to enforce it is denied.