**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MILWAUKEE ELECTRIC TOOL CORPORATION, Respondent.**

**No. 11683.**

United States Court of Appeals Seventh Circuit.

Sept. 26, 1956.

---

5. See Criminal Rule 29.

David P. Findling, Associate Gen. Counsel, N. L. R. B., Washington, D. C. (by Owsley Vose, Washington, D. C.), Theophil C. Kammholz, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Arnold Ordman, Sidney D. Goldberg, Attys., N. L. R. B., Washington, D. C., for petitioner.

Suel O. Arnold, Dougherty, Arnold & Philipp, James T. Murray, Milwaukee, Wis., for Milwaukee Electric Tool Corp., respondent.

Before FINNEGAN, LINDLEY and SCHNACKENBERG, Circuit Judges.

FINNEGAN, Circuit Judge.

Disagreement between the Board and its trial examiner is involved in this petition for enforcement of the administrative agency's order entered June 13, 1955, with two members dissenting.[1] A critical phase of the affirmative action ordered by the Board, required respondent Milwaukee Electric Tool Corporation to reinstate Bernard J. Stempniewski, one of the charging parties and motor department steward in Milwaukee's plant. Respondent's admitted discharge [2] of this employee is the focal point of the problem in this review.

That part of the consolidated complaint, relevant here, alleges respondent discharged Stempniewski because of his interest in the activities on behalf of Local 1035, International Union of Electrical, Radio and Machine Workers, CIO. Respondent answered this portion of the complaint as follows:

"Denies that on or about November 27, 1953, by its president, the respondent discharged its employee, Bernard J. Stempniewski, because of Stempniewski's interest in and activities on behalf of the union; admits that on November 27, 1953 the respondent by its president discharged its employee * * * but alleges that such employee was discharged because of his wilfull failure and refusal to comply with the *rules and regulations of the respondent* and because of his inability and refusal properly to perform the duties which were assigned to him by respondent." (Italics added.)

We quote that part of the pleadings because subsequently the Board pointed up respondent's failure to "raise a specific plant rule as a defense in this case." Milwaukee Electric Tool Corporation, 112 N.L.R.B. 1135, 1141 (1955). With that in mind, the following excerpt from the proceedings before the trial examiner takes on added significance:

"Trial Examiner: Will you concede that there is no rule at the plant against employees talking to each other during working hours * *.

---

1. Board members Rogers and Peterson each filed separate dissents. The latter dissent has no bearing on the specific question now before us.

2. Respondent's exhibit 4, before the Board, is its "Pay Roll Change Notice," dated 11-30-53 directing that Benny Stempniewski be paid off and removed from the payroll. Under remarks appears this longhand notation: "Discharged because of coercive activities and carrying on union activities during working hours."

"Mr. Arnold: [Appearing for the respondent] I will concede there was no rule preventing employees from talking during working hours, but that Mr. Siebert (Respondent's president) stated in May, the latter part of May, or the first part of June, 1953, that there was to be no talking among the employees during working hours about joining the union. * * *

"Mr. McLeod [General Counsel]: * * * I would like to say that I am perfectly willing to accept this stipulation concerning what the facts were in that respect.

"Trial Examiner: I assume that that is fair enough * * *." [3]

Anchoring in that concession the trial examiner concluded respondent's president Siebert had articulated a discriminatory "rule"; that Stempniewski had been discharged thereunder in violation of § 8(a) (3) and (1) of the National Labor Relations Act, as amended, 61 Stat. 136, 29 U.S.C.A. § 158(a) (1) and (3). The actual motive for discharging Stempniewski, according to the examiner's conclusion was the report to Siebert that his employee, during working hours, had spoken to another employee about joining the Union. "Since there was no evidence that Stempniewski's activity interfered with his or Schaefer's (an employee of respondent) work and inasmuch as the Employee's rule," the Board stated as part of its decision (112 N.L.R.B. 1135, 1141), "in the Trial Ex-

aminer's opinion, was discriminatory, the Trial Examiner found the discharge was discriminatory."

Disagreeing with its examiner, the Board majority determined [4] that there was no rule banning solicitation. Member Rogers, on the other hand, dissenting because he thought the evidence established, and the record so reflected, existence of a no-solicitation rule, but which, contrary to the examiner's position, was a valid rule. From this single record, three divergent views emerge, viz.: (i) respondent did not promulgate any such rule, (ii) it did do so, but the rule was discriminatory, and (iii) there was a valid rule.

■ Faced as we are with the General Counsel's stipulation, the conclusion is inescapable [5] that Siebert made the announcement, already quoted and fully conceded by his attorney. A finding of "no rule" cannot fairly be supported by reference to this record containing that stipulation.

Factually speaking the Board insists this record discloses a pattern of unfair practices emanating from respondent's President. There is evidence that Siebert considered Stempniewski, an active Union adherent, to be a disloyal employee. It is equally clear that Stempniewski, as steward and trustee, processed grievances, collected dues, and solicited employees to become Union members. There is also unequivocal evidence that Siebert rejected a contract tendered by the Union containing a union security

3. Official Report of Proceedings before the N.L.R.B. at pages 218 and 220. See also: 112 N.L.R.B. 1135, 1141 (1955) where the Board quoted respondent's attorney and noted General Counsel's stipulation.

4. 112 N.L.R.B. at 1142: "In view of the manner in which the issue concerning the Respondent's prohibition on union talk during working hours was raised, *the meager facts presented as to its terms and application,* the vagueness of President Siebert and Superintendent Theilig in testifying as to what Siebert had said to employees on the subject, the Respondent's failure to bring any rule to Stempniewski's attention or reprimand him personally at the time it claims he collected

dues and solicited during working hours, and Siebert's admission that most rules were not enforced, the Board cannot find that the Respondent had in effect a plant rule banning solicitation within the meaning of prior cases dealing with the validity of no-solicitation rules." (Emphasis added.)

5. Member Rogers, when discussing this aspect of the case pointed out (112 N.L. R.B. 1135, 1145): "* * * Stempniewski's own testimony to the effect that he did not solicit for the Union during working time would seem to indicate that he personally was aware of the rule which my colleagues say did not in fact exist."

or maintenance of membership provision. Indeed, Siebert called all his employees together, on company time, and stated to them: "I will never operate this plant if I have to sign a contract that embodies a union security clause of that nature, as it tends toward a complete union shop or a closed shop." (Joint Appendix, 16).

Paraphrasing the following piece of Siebert's testimony would distort it, and for that reason we reprint here:

"Q. Now, do I understand you correctly, then that your view was that any union employee who attempted to influence other employees to join the union by telling them that they would have to join, you felt that that constituted disloyalty to your views, is that correct? A. Disloyalty to the company's statement, or

—

"Q. Policy? A. (Continuing) —policy, that is right.

"Q. And you felt that that was sufficient disloyalty to warrant discharge? A. I did." [6]

Coupling the foregoing attitudes reflected by Siebert, with some other views expressed by respondent's President to the effect that as long as he lived the plant would operate as an "open shop" and that "nobody was going to bother" non-union employees, the Board contends there is enough manifestation of the "real reason" for Stempniewski's discharge to warrant its order of reinstatement. We disagree.

As we read the Board's argument, studded with handpicked fragments of evidence, it collides with several pertinent propositions stated by Judge Lindley when delivering the majority opinion reported as N. L. R. B. v. Wagner Iron Works, 7 Cir., 1955, 220 F.2d 126, 133: "Obviously, the Act does not interfere with the employer's right to conduct his business, and, in doing so, to select and discharge his employees. It proscribes the exercise of the right to hire and fire only when it is employed as a discriminatory device. [Citing.] The Board may not 'substitute its judgment for that of the employer as to what is sufficient cause for discharge' [citing] and discrimination may not be inferred from an employee's mere membership in a union. [Citing.] * * * "

The utterances of Siebert are, on this record, insufficient to make the discharge of Stempniewski more than suspect, but not discriminatory. They fail, in our opinion, to support the Board's findings in this regard. Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; N. L. R. B. v. Brady Aviation Corp., 5 Cir., 1955, 224 F.2d 23. Several employees testified that Stempniewski contacted and solicited them to join the union during working hours, matters which Stempniewski had denied during his testimony.

Validity or invalidity of respondent's "rule" was not reached by the Board majority because of the tack pursued in disposing of this case. Accordingly there was no need to invoke the "presumption" mentioned in Republic Aviation Corp. v. N. L. R. B., 1945, 324 U.S. 793, 802, 65 S.Ct. 982, 89 L.Ed. 1372. Thus, the order and record comes before us devoid of a determination by the Board majority of the legality of respondent's rule. But the question is before us. We think that rule is valid under the facts and circumstances spelled out by the record brought here for review. N. L. R. B. v. Peyton Packing Company, 49 N.L.R.B. 828, 843 (1943), affirmed 5 Cir., 1944, 142 F.2d 1009. An examination of the facts under which we decided Caterpillar Tractor Co. v. N. L. R. B., 7 Cir., 1956, 230 F.2d 357 illustrates how inapposite its use by petitioner is to the present question.

The Board's petition for enforcement of its order is denied.

6. Joint Appendix at page 17. Siebert was called as a witness by General Counsel under Fed.R.Civil Proc. 43(b), 28 U.S. C.A.