**COMMERCIAL CONTROLS CORPORA-
TION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

**No. 334, Docket 24861.**

United States Court of Appeals
Second Circuit.

Argued April 15, 1958.

Decided April 28, 1958.

Charles S. Wilcox, Rochester, N. Y. (Richard L. Epstein, Rochester, N. Y., Harris, Beach, Keating, Wilcox, Dale & Linowitz, Rochester, N. Y., on the brief), for petitioner.

Arnold Ordman, Attorney, National Labor Relations Board (Jerome D. Fenton, General Counsel, Thomas J.

McDermott, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel and Margaret M. Farmer, Attorney, Washington, D. C., on the brief), for respondent.

Before CLARK, Chief Judge, and LUMBARD and WATERMAN, Circuit Judges.

PER CURIAM.

Commercial Controls Corporation, a manufacturer of business machines and electric heaters in Rochester, New York, petitions, pursuant to § 10(f) of the National Labor Relations Act, 29 U.S.C.A. § 160(f), to set aside an order of the National Labor Relations Board issued on September 13, 1957 and amended November 15, 1957, which order, based upon the trial examiner's intermediate report directs the company to cease and desist from discouraging membership in District Lodge No. 6, International Association of Machinists, AFL-CIO, threatening employees with reprisals, prohibiting the distribution of union literature on company property during non-working time and also directs reinstatement of employee Herman Hartman with back pay and the usual posting of an appropriate notice.

The company alleges that on the entire record the findings are not supported by substantial evidence and that is the principal question.

A review of the entire record discloses that there was substantial evidence to support the report of the trial examiner and the decision and order of the Board. Universal Camera Corp. v. N. L. R. B., 1950, 340 U.S. 474, 71 S.Ct. 456, 95 L. Ed. 456. There was evidence that Department Manager Sauer told employees who wore union buttons that they were being watched and had better stay close to their machines and that later Sauer said he would fire all men wearing union buttons if he had his way. The discharged employee, Herman Hartman, testified that he was warned by his department manager Beechey that he might as well quit as the company would eventually get rid of him because of his union activities. Although he testified Beechey never denied this. These incidents were sufficient to justify a finding that the company was engaging in unfair labor practices within the meaning of § 8 (a) (1) of the Act, 29 U.S.C.A. § 158 (a) (1).

Against this background, the evidence showed that Hartman was known to be a member of the union and a union organizer. After the company learned that Hartman planned to pass out some literature it decided to forbid the distribution of printed matter anywhere on the company property, at any time, and the factory superintendent, Elmer Abell, so directed Hartman on June 19, 1955 at which time Hartman promised to comply. Later, on July 11, after quitting time Hartman handed out eight or nine union authorization cards in the plant to employees as they were leaving work. The next morning, July 12, Hartman was peremptorily discharged when he admitted that he had been previously instructed on June 19 not to distribute literature on company property and that he had distributed union cards the evening before, although he protested that he did not think this constituted distributing literature. As the record showed that no prohibition against the distribution of literature had ever been invoked prior to the union's organizational campaign, that there had been no posted notices to this effect, and that solicitations for various charitable events had been permitted on previous occasions, there was substantial evidence to support the finding that the rule prohibiting the distribution of literature was created to impede the union and not for a proper purpose. Hence it follows that the application of the rule to effect Hartman's discharge, in view of the warning above referred to, constituted an unfair labor practice within the meaning of § 8(a) (1) and (3) of the Act.

We grant enforcement of the Board's order and deny the petition of the company.