**TIME–O–MATIC, INC., Petitioner,**
**v.**
**NATIONAL LABOR RELATIONS
BOARD, Respondent.**
No. 12424.

United States Court of Appeals
Seventh Circuit.
March 5, 1959.

Edward B. Miller, Merrill Shepard, Willis S. Ryza, Chicago, Ill., for petitioner, Time-O-Matic, Inc. Pope & Ballard, Chicago, Ill., of counsel, for petitioner.

Thomas J. McDermott, Associate Gen. Counsel, Frederick U. Reel, Atty., Jerome D. Fenton, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Fred S. Landess, Atty., N.L.R.B., Washington, D. C., for respondent.

Before DUFFY, Chief Judge and HASTINGS and PARKINSON, Circuit Judges.

HASTINGS, Circuit Judge.

Petitioner, Time-O-Matic, Inc., requests this court to review and set aside an order of the National Labor Relations Board entered against it on July 28, 1958 directing it to cease and desist from conduct violative of § 8(a) (1) of the National Labor Relations Act (the Act) and to reinstate five employees discharged in violation of § 8(a) (1) and (3) of the Act, 29 U.S.C.A. § 158(a) (1, 3). The Board has asked for enforcement of its order.

Petitioner alleges that there is no substantial evidence in the record considered as a whole to support the Board's findings and, further, that the Board erred in reversing certain factual determinations of its Trial Examiner and in refusing to adopt the Trial Examiner's recommendation that the complaint be dismissed.

The International Union of Mine, Mill & Smelter Workers was, in the late summer of 1956, engaged in a campaign to organize petitioner's employees. A meeting with the company president was sought by Jesse Van Camp, the International Representative of the union, and

his five-man employee committee, but such a meeting never took place. There was considerable confusion concerning this proposed meeting (petitioner's president, Edward J. Schulenburg, having refused to meet during work hours) which fortuitously resulted in a work stoppage on September 13, when certain employees left their work stations and started to leave the plant. Van Camp, who was at the plant when this occurred, instructed the men, except the committee members among them, to return to work; and they did so without further incident. Van Camp and the committee then were informed by Schulenburg that he would meet with either the committee or Van Camp but not with both. This offer to meet separately was refused.

Two days later the company sent a letter to each employee advising them that their rights to organize would be respected but that the plant would operate as usual during the organization campaign and that *"absence from the plant during working hours without* [cause and permission] *is a violation of company rules and will result in disciplinary action."* (Our emphasis.) A few days later petitioner's foreman cautioned employees against leaving work without permission. As of the time of these occurrences, several rules were posted on a bulletin board but no such rule (against leaving the work area without permission) was among them.

On September 19, the company learned that two members of the union's organizing committee had distributed union pamphlets in the plant. These employees were called to the plant office and informed by the company president that distribution of such literature was prohibited and that they would be discharged if they violated such prohibition again. Subsequently, on the same day, the company posted this notice:

> "Notice—Any employee passing out literature either for or against a union on company premises will be subject for immediate discharge."

The notice was voluntarily removed by the company five days later. Petitioner contends that such removal was a revocation of the rule and the Trial Examiner so found.

■ On about September 28, after the union filed a petition for an election with the Board, one of the company's foremen, William Hughes, made a statement to prospective employees to the effect that "nonmembership in the union was a condition of employment." The company president denied having instructed Hughes to make such a statement and also testified that by the time he learned of Hughes' conduct he was informed that Hughes had been directed to discontinue making the statements.[1]

On October 4, 1956, the union held a meeting at which the committee discussed a rumor that the company was considering the discharge of one Bradfield. The committee decided that if Bradfield were discharged, it would request a meeting with Schulenburg to discuss the matter. The next morning, upon learning of Bradfield's discharge, the committee went in a body to the president's reception room and were informed by the receptionist that, although the president was not in, they could wait. A few minutes later John Sutphin, assistant to the president, arrived at work. Sutphin told them that Schulenburg was in town and would be there shortly. The committee indicated it would wait and Sutphin went to his office. At 7:40 Schulenburg's son called his father and told him the committee was waiting to see him. Schulenburg replied that he "would be out there shortly."

The committee was still waiting when Foreman Oller entered the room and

---

1. The record shows that the testimony of petitioner's president is contradictory on this point. Called as a witness on behalf of the Labor Board he testified on direct examination that he did not know whether Hughes had been directed to cease making the statements. On cross examination he indicated that by the time he learned of the statements, Hughes had been directed to discontinue making them.

told Eaglan and Kilby, two of the committeemen who worked under him, that they were away from their work areas without permission and that they should return to work. Eaglan told Oller to punch their cards out but Oller replied: "I will not punch your cards out, I will pull your cards out of the rack entirely" (that is, discharge them). Foreman Hughes, supervisor of the other three employees on the committee, also came to the reception room and told his subordinates that they were absent without permission and should return to work. The committee members continued to wait for Schulenburg who arrived at 8:10 a. m.

Ten minutes later Schulenburg had the committee enter his office where he had a tape recorder in operation to record the conversation. The committee chairman attempted to discuss the Bradfield discharge, but Schulenburg interrupted and asked each committee member in turn if they had their foreman's permission to be away from the job. They all replied in the negative and Schulenburg then stated: "Well, there is nothing further to discuss, because you are no longer employees of Time-O-Matic, and your checks will be mailed to you." As the employees were leaving Schulenburg told them: "You people didn't handle this right * * * you people seem to think you are bigger than I am." Upon learning of the discharge of the committee, nineteen other employees left their work and picketed the plant for three days and then returned to work.

The Trial Examiner found that petitioner had violated Section 8(a) (1) of the National Labor Relations Act by Foreman Hughes' statements and by its promulgation of a rule against distribution of literature for or against the union. The Board accepted these findings but a majority of three of its five members disagreed with the Trial Examiner's recommendation that no remedial order should issue. It is the Board's position that the fact that the foreman had been directed to discontinue such statements and that the no-distribution notice had been removed, thus purportedly revoked, does not make unnecessary a cease and desist order with the posting of appropriate notices.

The Trial Examiner found also that petitioner had discharged the five union committee members for cause. With this finding the majority of the Board also disagreed. In the view of the majority the employees were discriminatorily discharged in violation of § 8(a) (1) and (3) of the Act for engaging in a protected union or concerted activity.

■■ Petitioner has admitted that statements were made by its foreman, Hughes, to at least two prospective employees of the company to the effect that nonmembership in the union was a condition of employment. This occurred during the union's organizational drive. It is contended by petitioner that the record fails to establish that the statements were ever communicated to any employee or that they had any coercive effect. There is no merit to this argument. A violation of Section 8(a) (1) of the Act was complete when the statements were made to prospective employees who are employees for purposes of the Act. Phelps Dodge Corporation v. N. L. R. B., 1941, 313 U.S. 177, 182, 191–192, 61 S.Ct. 845, 85 L.Ed. 1271; 29 U.S.C.A. § 152 (3). No proof of coercive intent or effect is necessary under Section 8(a) (1) of the Act, the test being "whether the employer engaged in conduct which, it may reasonably be said, tends to interfere with the free exercise of employee rights under the Act." N. L. R. B. v. Illinois Tool Works, 7 Cir., 1946, 153 F. 2d 811, 814.

■ It is urged further that Hughes discontinued making such statements on orders from petitioner and that this isolated conduct should not result in remedial action. Assuming, however, that Hughes was directed to discontinue this course of conduct,[2] there is no evidence that the company took any steps to

2. See note 1, supra.

repudiate the statements by notifying the employees that they were unauthorized (H. J. Heinz Co. v. N. L. R. B., 311 U.S. 514, 521, 61 S.Ct. 320, 85 L.Ed. 309, (1941)), and, under the circumstances, the company is responsible for the unlawful conduct. Indiana Metal Products Corp. v. N. L. R. B., 7 Cir., 1953, 202 F.2d 613, 619–620. It is also clear that this is not a case involving isolated and sporadic conduct such as was involved in Ohio Associated Tel. Co. v. N. L. R. B., 6 Cir., 1951, 192 F.2d 664, 668; N. L. R. B. v. Hinde & Dauch Paper Co., 4 Cir., 1948, 171 F.2d 240 both relied on by petitioner. The instant case does not involve "isolated expressions" of a minor supervisory employee. The statements were made by a foreman, who by his own testimony made recommendations usually followed by the company in hiring employees, to job applicants who could have reasonably concluded that the statements represented company policy. The Board properly ordered the petitioner to cease and desist from such conduct. The fact that the foreman discontinued his conduct on orders of petitioner to do so does not, of itself, preclude the Board's authority to issue the remedial order. National Labor Relations Board v. Link-Belt Co., 1941, 311 U.S. 584, 600, 61 S. Ct. 358, 85 L.Ed. 368; Indiana Metal Products Corp. v. N. L. R. B., supra at page 619, of 202 F.2d.

■ With reference to the company no-distribution rule, petitioner contends that the record is devoid of evidence required to support a finding of its illegality. We hold that there is substantial evidence in the record considered as a whole to support the Board's finding.

The rule promulgated by the employer did not prohibit the distribution of all literature on the company's property but only union or anti-union materials. Not only was the rule so limited but it was timed to coincide with the union campaign and it precluded distribution during both working and non-working hours. The record shows that there had been no prohibition against the distribution of literature prior to this time, and also that solicitations for charities had been permitted on previous occasions. There is the further evidence that shortly before the rule was posted two employees who had been seen to distribute union literature were threatened with discharge if they did so again. All the indications were, in effect, that the rule was intended to impede the union and not for a proper purpose, such as the prevention of plant litter. The case is largely indistinguishable from Commercial Controls Corporation v. N. L. R. B., 2 Cir., 1958, 258 F.2d 102 where the Court of Appeals for the Second Circuit in a *per curiam* opinion upheld the Board's determination of the invalidity of a similar rule under similar circumstances.

■ Petitioner relies on language of the Supreme Court in N. L. R. B. v. United Steelworkers of America, 1958, 357 U.S. 357, 364, 78 S.Ct. 1268, 2 L.Ed. 2d 1383 to the effect that a vital consideration in the determination of the validity of a no-solicitation rule is the existence or non-existence of alternate channels of communication by the employees. However, the Steelworkers case involved an admittedly valid no-solicitation rule and a very narrow question whether an employer who actively engaged in anti-union solicitation could properly enforce an otherwise valid no-solicitation rule against the union. The Court indicated that findings by the Board on the question of alternate channels of communication were vital to such a question. Similarly such findings were considered essential in determining the validity of a rule prohibiting the solicitation by nonemployees on company property. N. L. R. B. v. Babcock & Wilcox Co., 1956, 351 U.S. 105, 113, 76 S.Ct. 679, 685, 100 L.Ed. 975. But the Court also pointed out in Babcock & Wilcox that different considerations may be controlling when employees are involved:

"No restriction may be placed on the employees' rights to discuss self-organization among themselves, unless the employer can demonstrate that a restriction is necessary to

maintain production or discipline." (*Ibid.*)

Petitioner contends also that the no-distribution rule was revoked by its removal from the bulletin board five days after it became effective. Assuming this amounted to a revocation, as the Trial Examiner found, there was no indication that the revocation was otherwise communicated to the employees. The two employees who had been threatened with discharge for its violation before it was even posted were not so informed. Under these circumstances the Board properly entered the cease and desist order as to the rule.

The cases cited by petitioner in support of its contention that it properly discharged five employees for a violation of a company rule indicate only that the Board and the courts have necessarily recognized and sought to strike a balance between recognized and mutually limiting rights of employers to make reasonable rules in order to maintain production and discipline and the employees to engage in concerted activity. See Republic Aviation Corp. v. N. L. R. B., 1945, 324 U.S. 793, 798, 65 S.Ct. 982, 89 L.Ed. 1372. Thus in Terry Poultry Company, 109 N.L.R.B. 1097 (1954) the Board recognized the reasonableness and validity of a long-established company rule, which was well-known to the employees, requiring them to notify their foreman or fellow employees when de-siring to leave the production line. The rule patently had the legitimate business purpose of limiting absences from a moving production line. Under these circumstances, the Board upheld the right of the employer to discharge two employees who left the production line without proper notification in order to present a grievance. Similarly in Santa Clara Lemon Association, 116 N.L.R.B. 44 (1956) the Board found no discriminatory purpose behind the discharge of an employee, the union's chief shop steward, who left the production line without her foreman's permission, in violation of a long standing company rule (which antedated the start of union activities and which was adopted for a legitimate business purpose), in order to present a grievance.[3]

In the instant case, however, there was no formal posted company rule requiring an employee to gain his foreman's permission before leaving his work area. There is nothing to indicate such a rule was required for plant efficiency. Indeed, the president of the company testified that the plant had no production line as such and that absence from the work bench would not interrupt the flow of material unless an employee should be gone "for considerable length of time." The letter sent to the employees dated September 13 stated only that absence *from the plant* without cause or permission was a violation of company rules.

---

**3.** See also Crucible Steel Castings Company, 101 NLRB 494 (1952) where the Board found no discrimination in the discharge of an employee who left work, contrary to plant rules, to present a grievance where that employee "has persisted * * * on numerous occasions in handling grievances *in a manner contrary to the* [*collective bargaining*] *contract provisions* as well as in violation of *posted* shop rules * * *." (Emphasis added.) (id. at 495).

In W. T. Smith Lumber Company, 79 NLRB 606 (1948) a patently valid no-solicitation rule was involved and the Board necessarily found no discrimination in company sanctions for its violation. In the case of The American Thread Company, 84 NLRB 593 (1949) the Board found no discrimination in the dis-charge of an employee who wilfully violated acknowledged company rules including one prohibiting the use of profane and vulgar language in addressing an overseer and one prohibiting leaving his machine without permission. In Wilson & Co., Inc., 105 NLRB 823 (1953) an employee was found to have been discharged for cause where he wilfully disregarded instructions of his supervisor and went to the cafeteria before the time for his regular break. Thirty other employees who had been discharged for going out on strike were ordered reinstated.

See also N.L.R.B. v. Milwaukee Electric Tool Corp., 7 Cir., 1956, 237 F.2d 75, 78; Rubin Bros. Footwear v. N.L.R.B., 5 Cir., 1953, 203 F.2d 486, 487.

It was admittedly prompted by the unscheduled union walkout on that date. One of petitioner's foremen, Hughes, testified that he did not recall having told any employees that the company had a rule against leaving the work area before September 13, the date of the walkout. He indicated that on that date the employees were so informed. Foreman Oller testified similarly although he indicated that prior to September 13 he had spoken to several employees about their habits of excessive visiting.

The record further shows that while the five employees were waiting in the plant office for the president, admittedly for the purpose of presenting a grievance, they talked to two plant officials, the assistant to the president and the president's son, who made no attempt to have the men return to work or to arrange for a later meeting either during or after work hours. This at best indicates a lack of concern with maintenance of production and discipline. The foremen did order the men back to work but this was after the men had talked to their superiors. It is reasonable to assume that the employees were justified in believing they would be permitted to see the president. When the president finally arrived he refused to discuss the grievance and summarily dismissed the employees. Such arbitrary action would seem more consistent with antipathy for union activity than concern over plant rules. Cf. E. Anthony & Sons, Inc. v. N. L. R. B., 1947, 82 U.S.App.D.C. 249, 163 F. 2d 22, 26–27.

We hold, therefore, that there is substantial evidence based on the record as a whole to support the Board's finding that these employees were discharged, not for a violation of a plant rule, but for engaging in protected concerted activity, the company's purpose being to discourage union organization in its plant.

See N. L. R. B. v. J. I. Case Co., Bettendorf Works, 8 Cir., 1952, 198 F.2d 919; Modern Motors, Inc. v. N. L. R. B., 8 Cir., 1952, 198 F.2d 925; N. L. R. B. v. Kennametal, Inc., 3 Cir., 1950, 182 F.2d 817, 19 A.L.R.2d 562. As indicated by the Court of Appeals for the Eighth Circuit in J. I. Case, the employees' protest over treatment accorded a fellow employee might properly take the form of a strike. Such protest may necessarily be asserted in a lesser form, such as a work stoppage or, as here, a presentation of a grievance, if the conduct could not "be declared to be legally unreasonable as a matter of particular plant-situation." N. L. R. B. v. J. I. Case Co., Bettendorf Works, supra at page 922.[4]

We find no error in the Board's refusal to accept the Trial Examiner's recommendation that the complaint be dismissed or its refusal to adopt the Examiner's conclusion that no violation was involved in the discharge of the employees. The material facts were undisputed and no particular weight attached to the Examiner's conclusions. J. I. Case Company v. N. L. R. B., 7 Cir., 1958, 253 F.2d 149, 155–156.

The petition to review and set aside the Board's order is denied and the Board's request for enforcement of its order is granted.

PARKINSON, Circuit Judge (dissenting).

In this case the Trial Examiner, after hearing all the evidence, specifically and definitely found that the employees were discharged for valid cause and that the evidence did not even justify an inference that the discharge was motivated by union or concerted activities; that an isolated statement of a foreman Hughes that union nonmembership was a condition of employment did not represent the employer's policy and he had discon-

---

4. In J. I. Case, three employees were discharged for leaving their work to protest the discharge of a fellow employee. The reasons given for their discharge were that one "walked off [the] job without the permission of foreman and at- tempted to incite a plant walkout," and the other two helped to incite an unlawful walkout. The court affirmed the Board's finding that the men were discharged in violation of § 8(a) (1).

tinued making any such statement long prior to October 15, 1956, the date that the unfair labor charge was filed; that a rule adopted by the employer on September 19, 1956 prohibiting its employees from plant distribution of literature either for or against a union was revoked within five days thereafter and, therefore, was not in effect for some time prior to October 15, 1956; and on the basis of such findings concluded the entire complaint against the employer should be dismissed.

Thereafter the National Labor Relations Board, with two of its five members dissenting, disagreed with the Trial Examiner, ordered the discharged employees reinstated with no loss of pay, and ordered the employer to cease and desist from conduct violative of § 8(a)(1).

At the risk of being labeled prosaic I still believe that in our system of free enterprise an employer has the right to conduct and manage his own business as he believes to be proper and no enactment of Congress has ever interfered with the normal exercise of the right of an employer to select or discharge his employees. National Labor Relations Board v. Local Union No. 1229, International Brotherhood of Electrical Workers, 1953, 346 U.S. 464, 474, 74 S.Ct. 172, 98 L.Ed. 195. The National Labor Relations Act proscribes the exercise of the right to hire and fire only when it is employed as a discriminatory device. N. L. R. B. v. Wagner Iron Works, etc., 7 Cir., 1955, 220 F.2d 126, 133; N. L. R. B. v. Milwaukee Elec. Tool Corp., 7 Cir., 1956, 237 F.2d 75, 78. However, an unlawful purpose is not lightly to be inferred and if it would appear that the employer was motivated by a dual reason, the record taken as a whole must present substantial evidence pointing clearly toward the unlawful motive before it can be said that the discharge was discriminatory. N. L. R. B. v. McGahey, 5 Cir., 1956, 233 F.2d 406, 413. It has been held that "[w]here the employer has proper cause for discharging an employee, the Board may

not rely on scant evidence and repeated inferences to make a finding that places the Board in the position of substituting its own ideas of business management for those of the employer", N. L. R. B. v. Blue Bell, Inc., 5 Cir., 1955, 219 F.2d 796, 798, and even where the Board could as reasonably infer an unlawful motive as well as a lawful one, which is far from the case here, the act of management in discharging an employee cannot be set aside as being improperly motivated. N. L. R. B. v. Huber & Huber Motor Exp., 5 Cir., 1955, 223 F.2d 748, 749.

If the material facts were undisputed and no particular weight attached to the Trial Examiner's conclusion, as the majority holds and with which I disagree, then that undisputed evidence is that the employees were discharged for just cause. The Trial Examiner found that the five discharged employees had not obtained permission from their foreman to be absent from their work in violation of the employer's rule. Not only were they absent from their work during working hours but they were in the office of the president in disobedience of their foremen who had ordered them back to their work and thereafter remained in the president's office in open defiance of their foremen.

Here the Trial Examiner and two members of the Board held that the complaint against the employer should be dismissed in its entirety. Three members of the Board concluded otherwise. This Court being thus faced with the necessity to determine which of these two holdings is correct on the evidence as a whole, under Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 71 S. Ct. 456, 95 L.Ed. 456, I am clearly convinced that the Trial Examiner was correct. United States Steel Co., Joliet Coke Works v. N. L. R. B., 7 Cir., 1952, 196 F.2d 459; Deepfreeze Appliance Division, Motor Products Corp. v. N. L. R. B., 7 Cir., 1954, 211 F.2d 458.

I agree with the late Judge Lindley that "the protective mantle of Section 7 is tempered by the employer's right to exact a day's work for a day's pay and

to maintain discipline, and does not reach activities which inherently carry with them a tendency toward, or likelihood of, disturbing efficient operation of the employer's business." Caterpillar Tractor Co. v. N. L. R. B., 7 Cir., 1956, 230 F.2d 357, 358.

I do not believe there is any fallacy in the doctrine that an employee is employed for the purpose of working during working hours and no rule of the employer is necessary to prohibit an employee's absence from his work during working hours without permission of his superior. I cannot subscribe to any principle of law which requires an industrial plant employer to have a rule prohibiting absence from work during working hours as a condition precedent to the discharge of a plant employee who leaves his work on his employer's time without the permission of his foreman, and not only that but before the rule is enforceable it must be of long standing, and not only that it be of long standing but that it be a formally posted rule.

Nor can I bring myself to a position of presuming that employers in America are guilty of discharging their employees illegally when they have a legal reason for so doing and that the burden is on the employer to prove that he did not discharge for an illegal reason.

In order to uphold and enforce the order here we must hold that the burden was on the employer to prove he discharged without discrimination and presume that the employer acted illegally when the evidence is positive that the discharges were for a legal cause. That is not the law.[1] Nor is it the law that an order commanding one to cease and desist from doing something which he is not doing at all should be upheld and enforced by this Court.

In my opinion the Trial Examiner and the two dissenting members of the

Board were absolutely correct in concluding that the entire complaint against the employer should be dismissed and the order of the three members of the Board is clearly erroneous.

I regret that I am compelled to disagree with the majority but in my considered judgment the order should be set aside.

---

1. The burden is on the Board to prove and not on the employer to disprove prohibited discriminatory motivations in discharging an employee, Indiana Metal Products Corp. v. N.L.R.B., 7 Cir., 1953, 202 F.2d 613, 616, and if an employee is subject to discharge for legal cause and also engaged in union activities that is a coincidence which does not destroy the just cause for discharge. N.L.R.B. v. Birmingham Publishing Company, 5 Cir., 1959, 262 F.2d 2, 9.