NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

FURRIERS JOINT COUNCIL OF NEW YORK, INTERNATIONAL FUR AND LEATHER WORKERS UNION OF THE UNITED STATES AND CANADA, Respondent.

No. 214, Docket 23250.

United States Court of Appeals Second Circuit.

Argued March 8, 1955.

Decided June 21, 1955.

David P. Findling, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Arnold Ordman and Elizabeth Head, Washington, D. C., for petitioner.

Harold I. Cammer, New York City, for respondent.

Before MEDINA and HINCKS, Circuit Judges, and BURKE, District Judge.

BURKE, District Judge.

This is an application of the National Labor Relations Board for enforcement of an order issued June 28, 1954 against respondent Union, following proceedings under Section 10 of the Labor Management Relations Act, 1947, 29 U.S.C.A. § 160, for the prevention of alleged unfair labor practices. The facts leading up to the Board's action are as follows: Morris Zweig, the complainant, was, and had been for several years, regularly employed by Abe Meltzer, Inc., a member of Associated Fur Coat & Trimmers Manufacturers, Inc., an association of employers, which has an industry-wide collective bargaining agreement with respondent Union. Meltzer's shop is located in the fur district, in a loft building at 333 Seventh Avenue, Manhattan. The Union contract provides for a 35 hour week, vacation and holidays with pay. It provides that it is cause for dismissal for an employee to work in another shop in the industry after his regular working hours in his own shop. The contract prohibited work on February 23, 1953, that being the day on which Washington's Birthday was celebrated. On that day Zweig and a coemployee of Zweig's named Abravaya, without obtaining permission from the Union, were working in the shop of another employer, Custom Furs, which had no regular employees of its own and no contract with the Union. They were discovered at work by Wasserman, a Union organizer. Wasserman asked them to stop work and to come to the Union office. Zweig refused and continued to work. Abravaya stopped work, but refused to go to the Union office. The next morning at about 8:20, Zweig, accompanied by a coemployee, arrived at the building where Meltzer's shop is located. They noticed a crowd gathered in front of the building, the largest building in the fur district and a place where fur workers customarily congregated. In the group were Wasserman and other Union officials. An argument followed regarding the incident of the previous day at Custom Furs. During the argument Abravaya arrived for work. The Union officials blocked the way of Zweig and Abravaya into the building and physically assaulted Abravaya, because of the previous day's incident at Custom Furs. The Board found that such conduct restrained and coerced Zweig and Abravaya in the exercise of a right guaranteed by Section 7 of the Act, 29 U.S.C.A. § 157.

It should be made clear that the question before us is not whether we approve the strong arm tactics of the Union used in this case. The Board seeks to enforce its decision and order that the respondent Union has violated Section 8(b) (1) (A) of the Act, 29 U.S.C.A. § 158(b) (1) (A). That section provides that it is an unfair labor practice for a union "to restrain or coerce employees in the exercise of the rights guaranteed in section 7" of the Act. Section 7 provides "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities * * *." The question before us is whether the Board was right in determining that Zweig and Abravaya, under the circumstances as found by the Board, were restrained and coerced in the exercise of a right guaranteed by Section 7.

The acts of restraint and coercion which are the basis of the Board's order, though wrongful, were reprisal measures taken by Union officials because Zweig and Abravaya, who were subject to the provisions of the contract, had worked on a holiday in violation of the contract. Since neither party at this stage of the proceedings has questioned the validity of a contractual provision restricting the right of employees to work overtime without permission of the

80

Union, for purposes of this opinion we, too, assume the validity of such a provision. Conduct which is in violation of valid provisions of a labor-management contract loses the protection ordinarily afforded under Section 7. National Labor Relations Board v. Sands Manufacturing Co., 306 U.S. 332, 344, 59 S.Ct. 508, 83 L.Ed. 682; National Labor Relations Board v. Dorsey Trailers, Inc., 5 Cir., 1950, 179 F.2d 589.

■ The majority of the Board has determined that the contract provision restricting overtime work reflected a Union policy to spread employment in the industry, and since the employees, by refusing to comply with that restriction, were exercising a right conferred by Section 7 to refrain from concerted activities for "mutual aid or protection", an unfair labor practice was established. This we think ignores the important fact, pointed out by the trial examiner, that many provisions commonly found in collective bargaining agreements are the realization of a Union policy. When the Union policy of spreading employment in the industry by imposing restrictions on overtime work attained valid contractual status, employees lawfully bound by the contract were not free to violate the agreement under the guise of engaging in concerted activities for mutual aid or protection or of refraining from doing so, within the meaning of Section 7. We agree with the view of the dissenting Board member that Section 8(b) (1) (A) was not intended to confer on the Board general police power covering all acts of violence by a Union, but rather was intended to bring within its scope only such acts of violence as were directed against the exercise by employees of rights guaranteed by Section 7, and that employees have no protected right under Section 7 to violate the valid provisions of a collective bargaining agreement. The Board's interpretation would have the effect of furnishing statutory protection to employees who choose to violate valid provisions of labor-management contracts. This we think is not consistent with the underlying purpose of the Act to promote the consummation of collective bargaining agreements as "the effective instrument of stabilizing labor relations and preventing, through collective bargaining, strikes and industrial strife." H. J. Heinz Company v. N. L. R. B., 311 U.S. 514, 524, 61 S.Ct. 320, 85 L.Ed. 309. We do not sanction the Union conduct complained of. We hold that such acts do not constitute an unfair labor practice within the meaning of Section 8(b) (1) (A). Since no rights protected by Section 7 were involved the Board should have dismissed the charge.

Petition for enforcement denied.