NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

LOCAL 140, UNITED FURNITURE
WORKERS OF AMERICA, CIO, Alex
Sirota and Joaquin Pijuin Alvares, Re-
spondents.

No. 289, Docket 23943.

United States Court of Appeals
Second Circuit.

Argued April 3, 1956.
Decided May 9, 1956.

Theophil C. Kammholz, Gen. Counsel, David P. Findling, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Frederick U. Reel, James A. Ryan, Attys., National Labor Relations Board, Washington, D. C., for petitioner.

Rabinowitz & Boudin, New York City, for respondents.

Before FRANK, MEDINA and WATERMAN, Circuit Judges.

MEDINA, Circuit Judge.

Brooklyn Spring Corporation and Lorraine Fibre Mills, Inc. were affiliated companies, occupying the same plant and premises, engaged in the business of manufacturing upholstery supplies and related products in the City of New York. Until April 22, 1954, all was peaceful at the factory, but events connected with an attempt by respondent to unionize the place resulted in the order now sought to be enforced, which adjudged respondent guilty of unfair labor practices in violation of Section 8(b) (1) (A) of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., and direct-

ed the union to cease and desist from mass picketing which physically barred employees from entering or leaving the premises, and from assaulting supervisors or officials of the companies.

The evidence more than amply supports the findings. On April 22, 1954, at a time when there was no strike, fifty to seventy-five members of Local 140 and its adherents blocked the entrance to the factory at the time the employees were reporting for duty and physically kept them from going in. The employees were informed by these agents and representatives of Local 140 that there was a strike and they were told to enter automobiles to be driven to the union hall to be signed up. Those who refused were pushed into the cars and protests by some of the employees that they wanted to go home were disregarded. Most of them joined the union as a result of this persuasion and then returned to the factory bearing signs which stated that Local 140 was the sponsoring union and that the employees were on strike.

■ As far as we can discern the only reason advanced for a refusal to enforce the order with respect to the picketing is that it was an isolated incident, too trivial for notice by the Board or by us. But it was well planned and executed with all the precision of a military operation, and the illegal procedure adopted was so completely successful that attempts to do the same thing again were quite unnecessary. It would be a sorry state of affairs if such improper conduct should be condoned and encouraged by a ruling that only unsuccessful and repeated mass picketing, attended by physical exclusion of employees from their place of work, should be considered sufficiently substantial to warrant an adjudication that a union had restrained and coerced the employees in the exercise of their right not to join a union, guaranteed them in Section 7 of the Act, in violation of Section 8(b) (1) (A) thereof.

As the strike thus fomented proceeded and some of the employees refused to join the union, the incident of April 22, 1954, was followed by another. On May 6, 1954, while it was still dark and at about five o'clock in the morning David Slomowitz, the president of the companies, and his son Arnold arrived at the factory, in order to get the trucks out before the picket lines formed and to avoid any trouble. A street light across from the entrance to the plant illuminated an area of about twenty feet in circumference directly in front of the doorway. As the middle-aged Slomowitz and his son approached the door to unlock it "they were struck by a barrage of rocks and stones thrown at them from the darker areas of the street some distance away." Crouched in a doorway, they saw a small group of five or six men running toward them, led by the respondents Sirota, the manager of Local 140, and Alvares, who after April 22 was elected shop chairman of the union, in general charge of the picketing. These men were armed with pieces of lead pipe and blackjacks and they proceeded to give Slomowitz and his son a beating of so serious a nature that the older man was taken to the hospital where six stitches were taken in wounds on either side of his head. Fortunately, one of the assailants thought the police were coming and upon his warning the entire crowd ran down the street and disappeared.

The argument is advanced on behalf of the union that the law does not apply to coercion exercised against employers, that the Board is not supposed to exercise a "general police power covering all acts of violence by a Union," citing our decision in N. L. R. B. v. Furriers Joint Council, etc., 2 Cir., 224 F.2d 78, 80, and that the fact that Sirota and Alvares and their companions ran away and hoped to escape detection leaves the record bare of any proof that the attack was designed to have any effect whatever upon the employees who had not yet joined the union. We find no merit in either of these claims.

It was inevitable that the employees should learn of this brutal and unprovoked assault, and the Board properly held that "these employees might have reasonably regarded these incidents as a reliable indication of what would befall them if they sought to work during the strike." Radio Officers' Union, etc., v. N. L. R. B., 347 U.S. 17, 44–46, 74 S.Ct. 323, 98 L.Ed. 455. No evidence of specific intent is necessary, as these duly accredited representatives of the union must be presumed to have intended the natural and reasonably foreseeable consequences of their acts.

ι Moreover, the evidence in this record would have justified a finding that these men did intend that the employees should know of the assault and be guided accordingly. Doubtless the assailants hoped to escape detection and punishment. But the fact remains that the assault was committed at the very entrance to the factory and at a time shortly before some of the employees would come to work. But for the fact that someone called out "the cops," the beating would probably have continued until Slomowitz and his son were left bleeding and unconscious in the doorway, as a gruesome warning to those who otherwise might wish to continue to work for their employers.

■ Our decision in N. L. R. B. v. Furriers Joint Council, supra, has no bearing on the case before us now. There the assault was upon fellow members of the union who violated valid provisions of a collective bargaining agreement and, accordingly, we held that no protected right under Section 7 of the Act was involved. But here the assault occurred "under such circumstances as to insure that the employees would hear of it," as held by the Board, and the restraint and coercion inferred from such conduct had a direct bearing on the right of the employees " 'to form, join, or assist labor organizations' " and " 'to refrain from any or all of such activities' " as provided in Section 7.

The order of petitioner will be enforced.