**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL WOODWORKERS OF AMERICA, AFL–CIO, and Its Locals S–426 and S–429, Respondents.**

No. 16388.

United States Court of Appeals Fifth Circuit.

April 26, 1957.

Rosanna A. Blake, Atty., N.L.R.B., Marcel Mallet-Prevost, Asst. Gen. Counsel, Kenneth C. McGuiness, Gen. Counsel, Stephen Leonard, Associate Gen. Counsel, Frederick U. Reel, Atty., N.L.R.B., Washington, D. C., for petitioner.

J. R. Goldthwaite, Jr., Atlanta, Ga., Quitman Ross, Laurel, Miss., Adair & Goldthwaite, Atlanta, Ga., Cooper, Mitch & Black, Birmingham, Ala., for respondent.

Before HUTCHESON, Chief Judge, and TUTTLE and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This case is here upon the petition of the National Labor Relations Board pursuant to Section 10(e) of the National Labor Relations Act as amended, 29 U.S.C.A. § 151 et seq., for enforcement of its order requiring the respondents to cease and desist from restraining and coercing the employees of W. T. Smith Lumber Company, or the employees of any other employer, from doing business with Smith by threats of physical harm, whether such employees are strikers or nonstrikers.[1]

Admitting, as they do, that the several named respondents are jointly responsible for the acts of violence found by the Board to have been committed, and conceding the correctness of the Board's cease and desist order so far as it sought to prevent acts of coercion and violence as against nonstriking employees, the sole exception by respondents is to Part 2 of the decision.[2]

Respondents assert that the dissent rather than the prevailing opinion of the Board correctly expresses the law as to the issue here involved. Briefly this issue is whether admitted acts and threats of violence committed against the persons of supervisory employees and independent contractors or their employees who are engaged in performing

---

1. The full text of the Cease and Desist Order is as follows:

"1. Cease and desist from restraining and coercing the employees of W. T. Smith Lumber Company or the employees of any other employer doing business with Smith, by threats of physical harm to employees, whether they work for Smith during a strike by the Respondents against Smith; by threats of physical harm or assaults upon supervisors or managerial personnel of Smith or upon independent contractors doing business with Smith, including the pursuit by superior inimical forces, obstruction, halting, or damage to vehicles driven by such persons by the use of sticks, the throwing of missiles, the massing of pickets, or other physical means where such conduct is committed in the presence of employees of Smith or under such circumstances as to insure that they will learn of it, whether such employees are strikers or nonstrikers; or by like or related conduct restraining or coercing employees of Smith or of other employers doing business with Smith in the exercise of their rights under Section 7 of the Act."

2. "2. The Respondents except to the Trial Examiner's finding that the Respondents violated Section 8(b) (1) (A) by certain acts of the pickets, committed in the presence of strikers, but which were not witnessed by any other employees (i. e., coercion of supervisors or independent contractors dealing with the Employer). We find, in agreement with the Trial Examiner, that the striking employees herein were subjected to restraint by the misconduct of the pickets in their presence, although such misconduct was not directed against the striking employees themselves. We think it reasonable to infer that such misconduct had the effect of coercively deterring any of the strikers from abandoning the strike and returning to work. As the Board has stated, 'the interdependent guarantees of Section 8(b) (1) (A) and Section 7 of the Act include the protected right of employees to work in the face of a strike.' The protection afforded by these sections of the Act extends to the right to work. We find, therefore, with respect to the incidents under consideration, that the Respondents violated Section 8(b) (1) (A) by coercing and restraining striking employees in the exercise of their right to abandon the strike and return to work."

activities ordinarily carried on by employees of the company itself, can be said to violate Section 8(b) (1) (A),[3] if such threats and acts of violence are carried on in the presence of only striking employees.

Respondents contend that since the strikers who are engaged in manning the picket lines may be presumed to have made a decision to remain out of the plant during the strike, then in effect such decision is irrevocable and the persons thus engaged, as a matter of law, cannot be influenced or dissuaded from returning to work during the strike by acts of violence perpetrated by their fellows in their presence.

The general counsel argues just as strongly that no such presumption of irrevocability arises from the mere presence on the picket line of an employee. In other words, so it is argued, the striking employee may be coerced into retaining the status of a striker or even a picket by the threatening and violent conduct of other pickets (especially if these include the officers of the local involved) just as much as may a nonstriking employee.

Agreeing with the contentions of the general counsel the Board, correctly we think, held "it reasonable to infer that such misconduct had the effect of coercively deterring any of the strikers from abandoning the strike and returning to work." Respondents cite no judicial construction in conflict with the decision of the Board on record facts such as exist here. We think it comports with common sense to find that out of a shifting mass of from twenty-five to fifty pickets that may have been on duty during the several days on which the acts of violence occurred, there were some whose adherence to the cause of the strike, especially in the light of the extreme methods used by their leaders, might well, but for these acts of violence by which they were cautioned against such a step, have joined the other employees who remained at work in the face of the strike. See National Labor Relations Board v. Local 140, United Furniture Workers of America, C.I.O., 2 Cir., 233 F.2d 539. That such a conclusion is based on solid logic is indicated by the testimony given by one of the victims of the violent threats. When Wesley Adams, an employee who continued to work despite the strike, approached the plant his truck was struck by a rock and the next day he was stopped by four or five pickets. One of them, McCullough, asked Adams why he had not joined the strike. Adams replied he had to make a living for his family and asked McCullough what he would do in his place. McCullough's answer is significant in considering the issue here before us. He is quoted as having said: "Being as scared as I am and not knowing what could happen I would come out." Whereupon another picket commented: "You don't know what could happen." It is utterly unrealistic for respondents to contend in the light of such statements by strikers and active pickets that they were not and could not be influenced against returning to work by the conduct which caused McCullough to be "as scared as I am." This completely disposes of the statement in the dissenting opinion, adopted by respondents as the basis of their argument, to the effect that: "the fact that at some

3. Section 8(b) (1) (A) of the National Labor Relations Act as amended, 29 U.S. C.A. § 158(b) (1) (A), provides that it is an unfair labor practice for a labor organization or its agents to restrain or coerce employees in the exercise of the rights guaranteed in Section 7 of the Act, 29 U.S.C.A. § 157. Section 7 provides that employees have the right to engage in concerted activities and also have the right to refrain from any of these activities. The right to engage in these activities of course includes the right to strike and picket; the right to refrain from them includes the right to work in the face of a strike. Sunset Line & Twine Co., 79 N.L.R.B. 1487, 1504.

time in the indefinite future the strikers might wish to abandon the strike is far too speculative an event upon which to base an unfair labor practice finding that the strikers were vicariously coerced in their right to refrain from striking."

■ As has been pointed out above, respondents do not contest the findings as to the existence of the threats and violence. It would therefore serve no useful purpose for these to be detailed here. However, we think it appropriate to answer briefly the contention of respondents which, in effect, amounts to an argument that the National Labor Relations Board had acted in bad faith towards groups of employees and that these acts of violence are somehow to be condoned by reason of that fact. While stating that they do not ask the court to condone the improper conduct shown by the record, the argument concludes "we do ask the court to relegate this conduct to the background and to view the legal issue in the case with dispassionate vision." The short answer to this is that the improper conduct shown by this record is the nub and substance of the whole case. It is impossible to relegate the acts of violence against fellow employees, supervisors, and independent contractors to the background when it is such acts that are forbidden by the statutes as an unfair labor practice. Neither the Board nor the general counsel contends that it is the function of the Board to supplant the police power of the states. This of course does not mean that because of a breach of the peace violates the state's criminal statutes, it may not be noticed by the National Labor Relations Board in performing its statutory function. National Labor Relations Board v. Local 140, United Furniture Workers of America, C.I.O., supra.

The Board's order is valid and proper and is entitled to enforcement.