**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**H. R. McBRIDE, d/b/a H. R. McBride Construction Company, Respondent.**

**No. 6163.**

United States Court of Appeals
Tenth Circuit.

Jan. 6, 1960.

Lewis, Circuit Judge, dissented.

William J. Avrutis, Washington, D. C. (Stuart Rothman, Gen. Coun., Thomas J. McDermott, Associate Gen. Coun., Marcel Mallet-Prevost, Asst. Gen. Coun., Melvin J. Welles and James C. Paras, Attys., N. L. R. B., Washington D. C., with him on the brief), for petitioner.

Leonard L. Pickering, Albuquerque, N. M., for respondent.

Before HUXMAN, PICKETT and LEWIS, Circuit Judges.

PICKETT, Circuit Judge.

This is a petition for the enforcement of an order of the National Labor Relations Board requiring respondent to cease the practice found to be in violation of Section 8(a) (1) of The Labor Management Relations Act, 29 U.S.C.A. § 158(a) (1). Respondent resists enforcement of the order on the ground that the record, considered as a whole, fails to establish the unfair labor practice on which the order was based.

In June of 1957 a representative of Local 16 of the International Union of Hod Carriers and Common Laborers, together with spokesmen for the New Mexico Building & Trades Council, approached the respondent for the purpose of persuading him to pay the prevailing union wage scale to his employees. Respondent McBride, doing business as H. R. McBride Construction Company, was engaged in constructing several buildings in Farmington and Aztec, New Mexico. His employees were unorganized and the record does not indicate that a union was contemplated by them. Shortly after McBride refused to accede to the union demands, pickets were stationed at several construction sites where McBride's employees were working. The pickets, none of whom had been employed by McBride, carried signs reading: "H. R. McBride Company unfair to organized labor. Building Trades Council, A.F.L.–C.I.O." The purpose of the picketing was to publicize and protest the payment of wages which were below union scale.

The evidence is without conflict that the picketing enraged McBride to such an extent that he and his superintendent physically assaulted and verbally abused the pickets and even attempted to run one of them down with a pickup truck. His anti-union attitude was pronounced, and on one occasion two of his employees joined in the abuse directed at the pickets and the unions. These incidents occurred over a period of several months. The Board found that the assaults and threats of violence constituted interference, restraint and coercion of McBride's employees in the exercise of their rights guaranteed under Section 7 of the Act, 29 U.S.C.A. § 157, in violation of Section 8(a) (1) thereof. The Board's order required McBride to cease and desist from interfering with, restraining or coercing his employees by assaulting, threatening to assault, or vilifying the persons engaged in lawful picketing, and to post appropriate notices.[1]

---

1. The Trial Examiner's "Concluding findings", which the Board adopted, read:
"Under Sections 7 and 8(a) (1) of the Act it is an unfair labor practice for an employer to interfere with, restrain, and coerce his employees in the exercise of the rights guaranteed by the Act. The record, as summarized above, leaves no room for doubt that McBride's and Blackwood's conduct constituted interference, restraint, and coercion within the meaning of Section 8(a)(1) of the Act. This conclusion is buttressed by the fact that Blackwood's October 30 attempted assault upon, and villification [sic] of, the picketers took place in the presence of

The only question presented is whether the abuse levelled at the pickets while they were engaged in expressing the Union position, interfered with or coerced McBride's employees in the exercise of their Section 7 rights, which are:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a) (3) of this title."

The substance of McBride's resistance to the order of enforcement is that, conceding his conduct to be as charged, it could not have had any effect on his employees because it did not occur in their presence and was not such as would interfere with their rights secured by Section 7, even had they known of it. The Board counters that, in fact, two of the employees did observe the abusive practices and that because of the "relatively small size of the project and community where they occurred" the other employees could reasonably be expected to learn of such extremely violent conduct. And, to meet the contention that the conduct was not coercive as to the employees, even if they knew of it, the Board relies on several cases from other circuits. N. L. R. B. v. International Woodworkers, 5 Cir., 243 F.2d 745; N. L. R. B. v. Local 140, United Furniture Workers, 2 Cir., 233 F.2d 539. In both of those decisions it was held that the right of employees to refrain from joining or assisting labor organizations, which right is also guaranteed by Section 7, was interfered with as the result of violent assaults on employers and supervising employees perpetrated by union agents. The following statement from the Second Circuit case is especially pertinent to the facts of this case:

"The argument is advanced on behalf of the union that the law does not apply to coercion exercised against employers, that the Board is not supposed to exercise a 'general police power covering all acts of violence by a Union,' citing our decision in N. L. R. B. v. Furriers Joint Council, etc., 2 Cir., 224 F.2d 78, 80, and that the fact that Sirota and Alvares and their companions ran away and hoped to escape detection leaves the record bare of any proof that the attack was designed to have any effect whatever upon the employees who had not yet joined the union. We find no merit in either of these claims.

"It was inevitable that the employees should learn of this brutal and unprovoked assault, and the Board properly held that 'these employees might have reasonably regarded these incidents as a reliable indication of what would befall them if they sought to work during the strike.' Radio Officers' Union, etc., v. N. L. R. B., 347 U.S. 17, 44–46, 74 S.Ct. 323, 98 L.Ed. 455. No evidence of specific intent is necessary, as these duly accredited representatives of the union must be presumed to have intended the natural and reasonably foreseeable consequences of their acts." 233 F.2d 540, 541.

■ It is extremely improbable that the several outbursts of violence extending over a period of several months,

---

two McBride employees, one of whom attempted to assist Blackwood in assaulting Baca and Wilkins. Under the circumstances, and upon the entire record in the case, the undersigned finds that Respondent's conduct, as found herein, would interfere with, restrain, and coerce Respondent's rank-and-file employees by indicating what might befall them if they supported the Union, and therefore such conduct is violative of Section 8(a) (1) of the Act." (Blackwood was the Superintendent and Baca and Wilkins were pickets.)

which so vividly illustrate McBride's bitter anti-union attitude, would go unnoticed by the employees of this rather small and compact business operation. The natural result of such conduct is to restrain or coerce employees in the exercise of rights provided for in Section 7, and the employer is held to foresee the probable consequences of his acts. Radio Officers' Union v. N. L. R. B., 347 U.S. 17, 45, 74 S.Ct. 323, 98 L.Ed. 455.

 The question remains as to whether the employees' knowledge of McBride's abusive conduct amounted to an unfair labor practice in violation of Section 8(a) (1). The Act is intended to insure to employees the right to form independent opinions or decisions, free from undue employer influence, regarding their allegiance to labor organizations. To guarantee this right, the Act imposes a correlative limitation on the employer by prohibiting him from attempting to influence his employees' decisions concerning union matters by means of direct or indirect threats of reprisal or force. N. L. R. B. v. Corning Glass Works, 1 Cir., 204 F.2d 422, 35 A.L.R.2d 408; N. L. R. B. v. Continental Oil Co., 10 Cir., 159 F.2d 326; Valley Mould & Iron Corp. v. N. L. R. B., 7 Cir., 116 F.2d 760, certiorari denied 313 U.S. 590, 61 S.Ct. 1114, 85 L.Ed. 1545. Any conduct by an employer, the natural and probable tendency of which would be to interfere with that right, is made an unfair labor practice even though no showing is made as to what effect the conduct finally has on the employees.

Time-O-Matic, Inc. v. N. L. R. B., 7 Cir., 264 F.2d 96; N. L. R. B. v. Ford, 6 Cir., 170 F.2d 735. We are of the opinion that the outrageous violence, although not directed primarily at the employees, was so extreme that in all probability it would be viewed by them as an indication of the dangers and obstacles awaiting them should they in the future show any interest in a union organization. It is a reasonable inference that the normal effect of respondent's conduct would be to cause his employees to weigh the possibility of incurring reprisals or other hostile employer reaction before undertaking to exercise their rights secured by the Act. Such conduct displayed to the employees McBride's bitter opposition to unions and the extent of the measures he would resort to in resisting them. Radio Officers' Union v. N. L. R. B.,[3] supra; N. L. R. B. v. Ford Motor Co., 6 Cir., 114 F.2d 905, certiorari denied 312 U.S. 689, 61 S.Ct. 621, 85 L.Ed. 1126. We cannot say that the Board's findings are unsupported by substantial evidence or clearly erroneous.

The order will be enforced.

LEWIS, Circuit Judge (dissenting).

I would deny enforcement for it seems fundamental to me that before an employer can violate the rights of his employees guaranteed under Sec. 7 of the Labor Management Relations Act, 29 U.S.C.A. § 157, those rights must be involved directly or by allowable inference in the alleged violation. In each of the cases relied upon by the majority such is the factual background.[1] Here it is

3. In N.L.R.B. v. Continental Oil Co., 10 Cir., 159 F.2d 326, 330, we used this language:
"It is important to° consider that only twenty-five to thirty employees were involved in this organizational unit. Their relations to Superintendent Purswell were close and intimate. Purswell was the Boss of this particular 'oil patch', and undoubtedly had economic power over their jobs, and hence to influence them in the exercise of their industrial freedom. Unquestionably Purswell was violently anti-union and did not attempt to conceal his attitude. We think the violent and profane language of Purs-

well, when considered in its proper setting, coupled with his course of conduct before and after the employees had joined the union, went beyond the realm of persuasion. It became coercive, or at least was intended to have that effect. It was intended not only to dissuade the employees from joining the union—it went further than that, it was designed to impress upon them that if they did join the union they would incur the retributive displeasure of their employer."

1. Time-O-Matic, Inc. v. N.L.R.B., 7 Cir., 264 F.2d 96: discharge of employees for

not. The Board made no finding that the Union in picketing this employer was attempting to communicate with the company employees or to in any way further any of their rights, directly or indirectly. Quite the contrary appears from the record. There was no dispute between McBride and his employees. There was no effort upon the part of the Union to organize the employees. The employees were simply non-union, a right accorded them under the Act. The admitted effect of the picketing was one perhaps foreign to the immediate interests of the employees—to apply economic pressure upon the employer by preventing union deliveries to the job sites and diverting sympathetic customers away. Such picketing is a lawful method of furthering unionism. But the purpose of Sec. 7 is not to strengthen unionism but to protect employees in their right to make free choice.

The fact that violence forms the background of this inquiry neither sets nor restricts the power of the National Labor Relations Board in dealing with unfair labor practices. N. L. R. B. v. International Woodworkers of America, 5 Cir., 243 F.2d 745. Regardless of how reprehensible the conduct, Sec. 8 of the Act (29 U.S.C.A. § 158(a)) was not intended to confer on the Board general police power covering all acts of violence by a union or an employer, but prohibits only such acts as are directed against the exercise by employees of rights guaranteed by Sec. 7. N. L. R. B. v. Furriers Joint Council of N. Y., 2 Cir., 224 F.2d 78.

I am in accord with the statement of the majority that the employer's "conduct displayed to the employees McBride's bitter opposition to unions and the extent of the measures he would resort to in resisting them." But bitter opposition to unionism is not unlawful nor is its manifestation in a field remote from the rights of particular employees even though knowledge of the employer's attitude may have an influence upon the subjective thinking of the employee. The attitude of the employer toward unionism always affects the employee's consideration of unionism; sometimes favorably, sometimes unfavorably. But the manifestation of the employer's attitude is not unlawful until it deters the specific rights of the employees under Sec. 7. The dispute here did not involve those rights. To enforce the Board order will but assure the Union a peaceful continuation of its promotion of unionism under the guise of protecting employees not involved in controversy and not within the shield of unionism. The Union rights should be protected under the police power of New Mexico not by according them under Sec. 7.

Although the main opinion states that the purpose of the picketing was to publicize and protest the payment of wages below union scales the Board made no finding of any kind upon this subject. Absent a specific and supportable finding that the union picketing was related to the right of the employees to organize or refrain from organization I would deny enforcement.

union activities; discriminatory prevention of union communication with employees. N.L.R.B. v. International Woodworkers, 5 Cir., 243 F.2d 745: violence to convince striking employees not to abandon strike. N.L.R.B. v. Local 140, United Furniture Workers, 2 Cir., 233 F.2d 539: violence to intimidate non-striking employees when union workers were on strike. N.L.R.B. v. Continental Oil Co., 10 Cir., 159 F.2d 326: threats of reprisal if employees organized. Valley Mould & Iron Corp. v. N.L.R.B., 7 Cir., 116 F.2d 760: promotion by employer of one union and disparagement of another to coerce joining of former.

N.L.R.B. v. Ford, 6 Cir., 170 F.2d 735: threats of discrimination against union employees. N.L.R.B. v. Ford Motor Co., 6 Cir., 114 F.2d 905: assaults to prevent distribution of union literature to employees.

See also cases involving violence: Republic Steel Corp. v. N.L.R.B., 3 Cir., 107 F.2d 472: attempt to dominate employee representation by terror. N.L. R.B. v. Dorsey Trailers, Inc., 5 Cir., 179 F.2d 589: refusal to bargain with the employees' chosen representative. N.L.R.B. v. Piedmont Wagon & Mfg. Co., 4 Cir., 176 F.2d 695: attempt to prevent union from organizing employees.