**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**TAXICAB DRIVERS UNION, LOCAL 777, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Respondent.**

**No. 14657.**

United States Court of Appeals Seventh Circuit.

Nov. 6, 1964.

Rehearing Denied Jan. 25, 1965.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Richard P. Lawlor, Attorney, N.L.R.B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Solomon I. Hirsh, Attorney, N. L. R. B., for petitioner.

Melvin B. Lewis, Howard W. Minn, Chicago, Ill., Jacques M. Schiffer, New York City, for respondent.

Before DUFFY, KILEY and SWYGERT, Circuit Judges.

DUFFY, Circuit Judge.

This case is here upon petition of the National Labor Relations Board (Labor Board) for enforcement of its order against Taxicab Drivers Union, Local 777, International Brotherhood of Teamsters (Union). The Board's decision and order are dated November 26, 1963, and are reported at 145 N.L.R.B. No. 18.

The Labor Board found the Union, by threatening and inflicting bodily harm, and by blocking ingress and egress of employees from the employer's plant, restrained and coerced employees in the exercise of their rights guaranteed by Section 7 of the Act, in violation of Section 8(b) (1) (A).

The employer, Crown Metal Manufacturing Co., with its principal place of business in Chicago, Illinois, was engaged in the manufacture, sale and distribution of metal display equipment and other metal products. At the time in question, it had about forty employees. The chief officers of the corporation were Albert Varon, president, and David Varon, secretary. Luis Lebron was the foreman of the welding department.

The violations found by the Examiner and the Board grew out of an organizing campaign conducted by the Union at the

employer's plant. When David Varon went to work on February 21, 1963, he found a picket line in front of the plant. After loading his private automobile for delivery of company products, he attempted to leave the plant and in the alley which he was required to use, he encountered Wallace Brown and Robert Howard,[1] who stopped his car. Howard said "Nobody is taking anything in or out." As Varon persisted, Howard seized Varon by the collar. Varon then returned to the plant and called the police. When he returned to his automobile he found the windshield had been smashed.

Joseph Glimco was president of Local 777. At the Union's request, the two Varons met with Glimco, Sam Portwin, a representative of the International Brotherhood of Teamsters, and Colling, a Union representative. Glimco asked the Varons to sign a recognition agreement. The Varons stated they doubted the Union had a majority of their employees signed up, and that the proper procedure would be to have a Labor Board election. Glimco said that was "kid stuff"; that they would never see an election because Local 777 did not do business that way. The Varons asked for time to consider the matter. Glimco gave them until the end of that day and closed the interview by telling them that the picketing, then in progress, would continue seven days a week, twenty-four hours a day, until they were out of business.

On February 25, the next business day, the Varons used their own automobiles to drive non-striking employees to and from the plant.[2] Shortly before 4 p. m., the end of the work-day, the regular complement of pickets was increased to fifteen or twenty including Brown, Howard and Frazier. The pickets formed a tight circle directly in front of the employees' entrance. A path through the picket line was opened by the police, and the employees, in a single group, were able to leave the premises.

For the succeeding three days, the exits were again blocked, and each time it required police intervention to open a path for the non-striking employees to leave the plant.

On February 26, as David Varon approached the plant with his employee-passengers, three automobiles placed side by side blocked his route to the plant. About thirty or thirty-five people were in the immediate area including striking employees and Glimco. Brown left his car and shouted obscenities at Varon, and threatened him by saying "Let's get that son of a bitch." A police officer told Brown to get back on the sidewalk and go about his business. Brown shouted obscenities at the officer, and then prevented him from leaving his car by leaning against the door. Another officer came up and Brown struck him.

On March 29, employee Figueroa arrived at the plant with five employee-passengers. Figueroa turned into the alley. Union organizer Frazier ran after the car. He tried to stick a knife through an opening in the car window, but the opening was too small. Frazier then attempted to force the car door open by pulling on the window. He succeeded in cracking the glass. Finally, superintendent Kramp came out of the plant and pushed Frazier aside, thus releasing Figueroa.

Striking employees met daily with Union agents Frazier, Brown and Howard. At one such meeting at a nearby bar, on March 29, Frazier and Howard told the strikers they had been instructed to beat up foreman Lebron. The Union

---

1. Brown, Howard and one other, Raymond Frazier, had been, since 1962, employed by Local 777 to perform what has been designated as "general duties" including organizational activities on behalf of Local 777.

2. The employees requested this procedure saying they feared their automobiles would be damaged if they drove them to the plant. They knew that on February 21, in addition to the damage to the windshield of David Varon's automobile, the convertible top of Lebron's car had been torn open and the tires slashed.

agent said the striking employees were to form a circle around Lebron and thus screen Frazier and Brown who were to beat him up. The strikers refused to participate in the plan.

On the same day, the Labor Board conducted a hearing on challenged ballots cast in a Board secret ballot election held on March 15. Lebron attended under subpoena. At recess, Frazier directed obscenities at Lebron and told Howard in a stage whisper that "We are going to get him." At the conclusion of the hearing, Lebron left the hearing room with Albert Varon and one Colger. Frazier occupied the same elevator for the ride to street level. As Lebron started walking on the sidewalk, Frazier, without any warning, knocked him to the sidewalk where Lebron was kicked four or five times in the head.[3] Lebron was taken to a hospital where he was treated including three stitches over his left eye. When he returned to work on April 1, he had a black eye, a swollen left ear and a bandage over his left eye.

On April 30, 1963, at the hearing before Trial Examiner John Funke, all parties were represented by counsel. At the end of the first day of the hearing, the general counsel asked for time to seek court-enforcement of the Board's subpoenas. The request was granted, and the Trial Examiner asked the general counsel to arrange for a mutually satisfactory date for the resumption of the hearing. Informed that June 25 would so qualify, the trial court fixed June 25 at 9:30 a. m. for the resumption of the hearing, and notified the parties by telegram. Sixteen days later, Examiner Funke received the Union's request for a further adjournment "to a date sometime in September 1963." The Examiner denied the request for a continuance and affirmed the June 25 date.

On the morning of June 24, attorney Howard W. Minn, with offices in Chicago, Illinois, called the Labor Board's Regional attorney and requested a one-day continuance because of court commitments on June 25. The attorney suggested that he call the Trial Examiner. However, when an attempt was made to reach him, it was learned he was enroute from Washington to Chicago. It was suggested that Mr. Minn appear on June 25 and request that the hearing go over for one day, but Mr. Minn stated he could not come as he was due in another court. It was then suggested that Mr. Minn send someone to the hearing and request that it be put over.

On June 25, at 9:30 a. m., neither Minn nor any one representing him or the Union appeared. The Trial Examiner then granted a one-day continuance, setting June 26 at 9:30 a. m. as the time for resuming the hearing. Mr. Henderson of the Regional staff, sent a telegram to Minn and attorney Jacques M. Schiffer of New York, informing them of the continuance.

Mr. Minn called Mr. Henderson acknowledging receipt of the notice, but stating that neither he nor attorney Schiffer could appear on June 26. Henderson suggested that Mr. Minn send somebody from his office to explain his position to the Trial Examiner or that he call the Trial Examiner by telephone at 9:30 a. m. No call was received by 9:40 a. m. and the hearing was resumed.

After some witnesses had been heard, attorney Barry Goodman entered an appearance upon behalf of Mr. Minn, and reported that Minn was busy in some state court proceeding, and that attorney Schiffer was also busy in either Washington, D. C., or some place in Ohio. Upon behalf of them, he requested an additional continuance, but this was denied by the Trial Examiner. At the conclusion of the general counsel's case on June 26th, the hearing was closed.

On this appeal, both attorneys Minn and Schiffer are on the brief for the respondent Union. Respondent argues

3. Terrell, a striking employee, who saw the assault, stated that both Frazier and Howard kicked Lebron after he was down.

that the Trial Examiner abused his discretion by denying further continuance of the hearing. Furthermore, respondent argues that, in any event, the Examiner was so biased against respondent that no amount of evidence would have had any meaningful effect. Respondent points out several statements of the Examiner such as "it is incredible that the rights of employees should be entrusted to a local operated by Glimco, Brown, Frazier and Howard. * * *" As further evidence of prejudice, respondent points out that the Labor Board did not adopt some of the remedies recommended by the Trial Examiner.

The evidence, including that hereinbefore stated, clearly demonstrated to the working employees of Crown Metal Manufacturing Company, the constant risks that they were running in their continued exercise of the Section 7 right to refrain from giving support to Local 777. The conduct of the Union's employees was a reliable indication of what might well befall them if they sought to continue their work. N. L. R. B. v. Local 140, United Furniture Workers of America, CIO et al., 2 Cir., 233 F.2d 539.

We think such conduct by the Union's representatives was a proper basis for the Labor Board to enter the order herein restraining Local 777 and the International Brotherhood of Teamsters, their employees and agents, from coercing employees of Crown Metal Manufacturing Company in the exercise of their rights guaranteed in Section 7 of the Act.

It is true, the Trial Examiner used some strong language in his intermediate report. His feeling of indignation apparently was brought about by the evidence of the conduct by representatives of the Union in attempting to intimidate working employees. In addition to the brutal physical violence and language hereinbefore quoted, there was additional vile and abusive language shouted by representatives of the Union which was so bad and so disgusting it has not been quoted in this opinion.

In spite of the feeling of disgust that the Examiner must have felt, we think his rulings were fair and impartial. We also feel that the failure to grant further continuances was within the discretion of the Trial Examiner. His ruling in this respect should not be disturbed in the absence of a clear showing of abuse of that discretion. N. L. R. B. v. American Potash & Chemical Corp., 9 Cir., 98 F.2d 488; N. L. R. B. v. Somerville Cream Co., Inc., 1 Cir., 199 F.2d 257. We hold that there was no abuse of discretion.

The decree of the Labor Board herein will be

Enforced.

## UPON PETITION FOR REHEARING

### PER CURIAM.

A decision in the above captioned cause was handed down by this Court on November 6, 1964, granting enforcement of an order of the National Labor Relations Board against the respondent herein, which order was dated November 26, 1963. A proposed decree was submitted by the Labor Board on November 12, 1964. Respondent presented objections to the proposed Decree. On November 20, 1964, respondent's petition for rehearing was timely filed. Our Decree which was entered on November 20, 1964, has since been vacated and withdrawn.

The order of the National Labor Relations Board dated November 26, 1963, will be amended by deleting the words " * * * or any other employer" appearing in the second and third lines of paragraph one of said order, so that the sentence will read, in part: "1. Cease and desist from restraining or coercing employees of Crown Metal Manufacturing Company in the exercise of their rights as guaranteed in Section 7 of the Act. * * *" In all other respects the order of the Labor Board will be enforced, and the petition for rehearing denied.

We follow the concurring opinion in National Labor Relations Board v. Unit-

ed Brotherhood of Carpenters, 7 Cir., 276 F.2d 694, 700, and Communications Workers of America, AFL–CIO v. National Labor Relations Board, 362 U.S. 479, 480–481, 80 S.Ct. 838, 4 L.Ed.2d 896.