[Civ. No. 50523. First Dist., Div. One. Apr. 28, 1981.]

PAUL W. BERTUCCIO, Petitioner, v.
THE SUPERIOR COURT OF SAN BENITO COUNTY,
Respondent;
UNITED FARM WORKERS OF AMERICA, AFL-CIO,
Real Party in Interest.

COUNSEL

Stanley E. Tobin, James G. Johnson, Stuart H. Young, Jr., and Hill, Farrer & Burrill for Petitioner.

William J. Thomas, Jr., as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Marco E. Lopez, Carlos M. Alcala, Carmen S. Flores, Ellen J. Eggers, Federico G. Chavez, Dianna Lyons, Francis E. Fernandez and Daniel A. Garcia for Real Party in Interest.

Ellen Lake, Manuel M. Medeiros and William G. Hoerger as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**GRODIN, J.**—This case arises out of a labor dispute in the garlic industry of San Benito County. The principal question presented is whether a superior court has jurisdiction to grant injunctive relief, at the suit of a grower, against alleged threats of violent conduct and obstruction of access by a labor organization directed at that grower's employees and supervisors, or whether the court's jurisdiction to grant such relief is limited to injunctions sought by the Agricultural Labor Relations Board (ALRB) pursuant to the Agricultural Labor Relations Act (ALRA) (Lab. Code, § 1140 et seq.). We hold that a superior court has jurisdiction to entertain a private suit for such injunctive relief, subject to certain limitations discussed herein.

### Factual and Procedural Background.

On July 30, 1980, Paul W. Bertuccio filed a complaint in the Superior Court of San Benito County, seeking injunctive relief and damages against the United Farm Workers of America, AFL-CIO (UFW) for conduct which Bertuccio alleged grew out of a collective bargaining dispute. According to the allegations of the complaint, Bertuccio owns and operates a farm consisting of numerous parcels aggregating approximately 3,000 acres of land in San Benito County, as well as a retail fruit and vegetable outlet and packing sheds bordering Airline Highway in Hollister, California. The complaint alleged that UFW had been certified by the ALRB as bargaining representative for certain of plaintiff's agricultural employees, but that the parties had been unable to reach agreement; and that on or about July 23, 1980, the UFW went on strike and commenced "picketing activities" about and around plaintiff's various premises.

The key allegations of the complaint, as they relate to this proceeding, were that in the course of the strike "defendants have engaged in acts of violence, vandalism, destruction of property, including, but not limited to, the property of plaintiff;" that they "threatened, assaulted and harassed plaintiff's employees, both at and away from plaintiff's premises;" that they "have trespassed upon plaintiff's premises, have en-

gaged in mass picketing of plaintiff's property and have blocked, obstructed and impeded the ingress and egress of plaintiff's employees and customers, and of the cars and trucks attempting to enter and leave plaintiff's premises;" that they have "massed pickets at, in front of, and across the various driveway[s] and other entrances to plaintiff's premises, as well as the public streets and highways at and around plaintiff's premises, making it impossible or difficult for persons and vehicles to enter or leave said premises and thereby restricting the flow of traffic on the public streets and highways at and around plaintiff's premises;" and that "[t]he pickets have shouted threats and abuses at plaintiff's employees, and anyone else who wishes to and attempts to enter or leave plaintiff's premises." The complaint alleged that these activities have seriously interfered with the operation of plaintiff's business, and were causing irreparable loss in that regard. The complaint was accompanied by a number of declarations purportedly in support of these allegations.

Based upon the verified complaint and these declarations, the superior court on July 30, 1980, issued a broad temporary restraining order. In addition, the union was ordered to show cause before the superior court why a preliminary injunction should not issue to the same effect.

The union sought relief from that order by petition for extraordinary relief in this court, but its petition was denied. It then filed opposition papers, including declarations which essentially characterized the picketing activities as peaceful and orderly and denied UFW responsibility for any violence or threats of violence.

On August 6, 1980, when the matter came on for hearing pursuant to the order to show cause which had been issued, the superior court judge who issued that order announced a possible conflict of interest and withdrew, continuing the temporary restraining order in effect pending the appointment of a new judge. On August 8, 1980, the matter was heard before a different judge, and after argument that judge concluded that the court had no jurisdiction to grant any of the requested relief except insofar as defendant's activities affected Bertuccio's customers and suppliers at his retail outlet on Airport Drive. Accordingly, respondent court issued an order dissolving the temporary restraining order and denying petitioner's request for injunctive relief except to the limited extent necessary to prevent the UFW from obstructing egress or ingress at petitioner's retail outlet.

■ Petitioner Bertuccio now seeks a writ of mandate to compel the respondent court to exercise what he asserts to be that court's jurisdiction, and to provide injunctive relief as requested. While recognizing that the dynamics of labor disputes generally outspeed the process of appellate review, and that the problems which confronted these parties might well be moot by the time of our decision, we nevertheless granted the alternative writ because we regarded the issues thus presented to be of broad public interest, likely to recur, and calling for prompt resolution. (*In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737]; *United Farm Workers of America* v. *Superior Court* (1975) 14 Cal.3d 902, 906 [122 Cal.Rptr. 877, 537 P.2d 1237].) Petitioner's position is supported through an amicus curiae brief from California Food Producers, Inc., and real party's position through an amicus curiae brief from the ALRB.

## Discussion.

The thrust of the UFW's contention as regards state law, and that of the ALRB as amicus curiae, can be readily summarized: Labor Code section 1160.9 provides expressly that the procedures set forth in the ALRA "shall be the exclusive method of redressing unfair labor practices." Section 1154, subdivision (a)(1), makes it an unfair labor practice for a labor organization to restrain or coerce employees in the exercise of their rights under section 1152; and employee rights under section 1152 include the right to participate or refrain from participating in concerted activities. Thus, violence and threats of violence directed against employees by a labor organization to induce their participation in concerted activities is an unfair labor practice within the jurisdiction of the ALRB, and that board has so held. (*Western Conference of Teamsters* (*V.B. Zaninovich*) (July 21, 1977) 3 A.L.R.B. No. 57.) Moreover, misconduct directed at supervisors (technically not "agricultural employees" within the meaning of the ALRA) may be unlawful if it occurs in the presence of employees and conveys to the employees what may happen to them if they act contrary to the demands of the labor organization. (*Ibid.*) Thus, it is argued the acts complained of herein were within the exclusive jurisdiction of the agency: the agency is empowered to seek immediate injunctive relief in aid of its jurisdiction, but a superior court may not issue injunctive relief against such conduct at the suit of a private party.

Petitioner, on the other hand, points to the fact that in industries other than agriculture courts have jurisdiction to enjoin acts or threats of

violence and obstructions to ingress and egress at the suit of a private party, and argues that if the California Legislature had intended to carve out a sphere of immunity for labor organizations representing agricultural employees it would have done so plainly and clearly. It is further contended that petitioner cannot obtain full relief by proceeding through the ALRB; and that injunctive relief against such conduct would present no significant impairment of the ALRB's function.

Both parties claim support for their respective positions in *Kaplan's Fruit & Produce Co.* v. *Superior Court* (1979) 26 Cal.3d 60 [162 Cal.Rptr. 745, 603 P.2d 1341]. In that case, an agricultural employer sought to enjoin what it claimed to be mass picketing on the part of the UFW, blocking ingress and egress to Kaplan's wholesale facility in Los Angeles. The trial court found that such mass picketing had occurred, but ruled that in the absence of violence or threat of violence it had no jurisdiction to grant injunctive relief. The Supreme Court disagreed, and held "that the ALRA does not divest the superior courts of jurisdiction, in a suit by private parties, to enjoin obstructions to access." (26 Cal.3d at p. 75.)

In reaching that conclusion, the Supreme Court took note of its prior holding in *Belridge Farms* v. *Agricultural Labor Relations Bd.* (1978) 21 Cal.3d 551, 558 [147 Cal.Rptr. 165, 580 P.2d 665], that the "exclusive method" language of section 1160.9 "simply constitutes a codification of existing federal law." "Accordingly," the court continued, "in defining the scope of preemption under section 1160.9, we adhere to the Legislature's directive in Labor Code section 1148 to 'follow applicable precedents of the National Labor Relations Act, as amended.' As explained in *People* v. *Medrano* (1978) 78 Cal.App.3d 198, 205 . . .: 'In designating the NLRA precedents as guideposts, the ALRA apparently incorporates into California law the general features of the [federal] preemption doctrine.' We therefore look to cases interpreting the NLRA as a guide to the determination of whether the ALRA preempts the power of superior courts to enjoin obstructions to access in a private suit." (26 Cal.3d at pp. 67-68.)

The court then proceeded to examine relevant federal precedents. It observed that while decisions of the United States Supreme Court had established as a general principle that the NLRB has exclusive jurisdiction over conduct which arguably involves practices either protected or prohibited under the NLRA (*San Diego Unions* v. *Garmon* (1959) 359 U.S. 236 [3 L.Ed.2d 775, 79 S.Ct. 773]), an exception to the general

rule of preemption allows for the power of local courts and agencies to adjudicate matters of particular local concern; and that the federal decisions "specifically acknowledge that local courts and agencies retain jurisdiction over private actions to enjoin obstructions to access." (26 Cal.3d at p. 68.) The court noted its own prior declaration in *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters* (1976) 17 Cal.3d 893 [132 Cal.Rptr. 443, 553 P.2d 603], reversed on other grounds, 436 U.S. 180 [56 L.Ed.2d 209, 98 S.Ct. 1745], that "'despite the *Garmon* rule, power was reserved to the states to prevent mass picketing, violence, threats of violence and obstructions to ingress and egress which threatened public health and safety.'" (26 Cal.3d at p. 69, fn. 5.)

If the court in *Kaplan's* had terminated its analysis at this point, UFW would have had no basis for its present argument. The court went on, however, to point out that the principal objective of the pickets in that case, and of the alleged interference to access, was to persuade prospective *customers* not to do business with Kaplan's (26 Cal.3d at pp. 71-72), and that obstruction of access of customers by a primary picket line is not an unfair labor practice under the ALRA. Consequently, the court reasoned, "the only issues which the employer can present to the ALRB are much narrower than the issue he can bring before the superior court; and an injunction obtained at the behest of the ALRB barring only unfair labor practices would not provide the employer with the full relief to which he is entitled." (26 Cal.3d at p. 74.) Here, by contrast, the UFW argues, the principal objective of the picketing, and of alleged interference to access, was to persuade *employees* to participate in concerted activity; and since restraint or coercion of employees is an unfair labor practice, full relief is obtainable through the ALRB and its exclusive jurisdiction should be upheld. The holding in *Kaplan's*, it contends, should be restricted to situations in which picketing is aimed at customers rather than at employees.

Several factors militate against such a narrow interpretation of *Kaplan's*. First, the court in *Kaplan's* stated its holding in broader terms, as we have observed, without distinction as to whether the picketing was aimed at customers rather than at employees.

Second, the federal precedents upon which the court principally relied for its analysis make no such distinction. Rather, those precedents recognize court jurisdiction to enjoin violence and obstruction of access

as an *exception* to preemption doctrine, applicable even where the union's activity is arguably prohibited by the NLRA, and thus subject concurrently to NLRB jurisdiction. (E.g., *Youngdahl v. Rainfair, Inc.* (1957) 355 U.S. 131, 132 [2 L.Ed.2d 151, 153, 78 S.Ct. 206].)[1] This nature of the local concern exception to federal preemption doctrine was recognized by the Supreme Court in *Kaplan's* (26 Cal.3d at p. 72, fn. 8).

Third, the distinction contended for would in many cases be extremely difficult to apply in practice. Roads or entrances used by employees will often be used by customers, delivery personnel, or others. Even in this case, the distinction is blurred by the allegations of conduct directed at supervisors. While it is true that such conduct may constitute an unfair labor practice, this is true only where, and because, that conduct has the effect of coercing or restraining employees in the exercise of *their* rights. (*Western Conference of Teamsters (V.B. Zaninovich)*, *supra*, 3 A.L.R.B. No. 57; *National Labor Relations Board v. Local 140, etc.* (2d Cir. 1956) 233 F.2d 539.) In the absence of such effect, an injunction obtained at the behest of the ALRB barring only unfair labor practices would not provide full relief.

Fourth, the reasons underlying the local concern exception to preemption doctrine apply in large measure without regard to such a distinction. As the Supreme Court noted in *Kaplan's*, a key issue with respect to applicability of preemption doctrine is "whether preemption is necessary to avoid conflicting adjudications which would interfere

---

[1]The ALRB as amicus curiae points to language in the United States Supreme Court decision in *Sears, Roebuck & Co. v. Carpenters* (1978) 436 U.S. 180, 197 [56 L.Ed.2d 209, 225, 98 S.Ct. 1745], which explains that the "critical inquiry ... is ... whether the controversy presented to the state court is identical to ... or different from ... that which could have been, but was not, presented to the Labor Board;" and it argues that by this test the court's jurisdiction in the instant matter was preempted. Insofar as this argument suggests that *Sears* has restricted or eliminated the exception to the federal preemption doctrine in favor of court jurisdiction over violence or obstructive conduct, the suggestion is clearly erroneous. The majority opinion in *Sears* unmistakably reaffirmed prior decisions applying that exception (436 U.S. 180, 195 [56 L.Ed.2d 209, 224]); Justice Powell, in a concurring opinion, elaborated upon the reasons for that exception (*id.*, at p. 213 [56 L.Ed.2d at p. 213]); and Justice Brennan, in a dissenting opinion joined by Justices Stewart and Marshall, observed that "state courts have jurisdiction over picketing that is obstructive, or involves large groups of persons, or otherwise entails a serious threat of violence" (*id.*, at pp. 226-227 [56 L.Ed.2d at p. 244]). Moreover, it is apparent that the issues presented in such a case to the state court and to the agency are not "identical." The state court is concerned with such conduct as it affects the person and safety of all individuals and the public; the agency is concerned only with the impact upon concerted activity.

UFW would distinguish the federal precedents on the ground that federal preemp-

with the regulatory activity of the administrative board." (26 Cal.3d at pp. 69-70.) "Obstruction of access is not protected by the ALRA; a court injunction barring such acts, so long as it does not bar legitimate union conduct, invades no right of the union under the act." (26 Cal.3d at p. 70.) The same, of course, is true of violence. (*Sears, Roebuck & Co. v. Carpenters* (1978) *supra*, 436 U.S. 180, 204 [56 L.Ed.2d 209, 229].) "The possibility that the Union is innocent of the charged conduct may be grounds for denying injunctive relief, but it does not invoke the preemptive jurisdiction of the board." (26 Cal.3d at p. 70.)

If, on the other hand, the union is guilty of the charged conduct, an injunction at the suit of a private party restraining threats of violence and obstruction to access is not likely to "threaten significant interference with labor board adjudications" (26 Cal.3d at p. 75), either in terms of the substantive questions upon which the agency may bring its expertise to bear or in terms of the relief ultimately to be afforded. While "simple congruity of legal rules does not, in this area, prove the absence of untenable conflict" (*Motor Coach Employees v. Lockridge* (1971) 403 U.S. 274, 290 [29 L.Ed.2d 473, 484-485, 91 S.Ct. 1909]), the determination of whether violence, threats of violence, or obstructions to access have occurred is well within the competence of the courts, and that determination can be made without considering the merits of the underlying labor dispute. And, as in the federal experience, the possible inconsistency of ultimate remedy is not alone a sufficient reason for preempting court jurisdiction with respect to such conduct. (See *Sears, Roebuck & Co. v. Carpenters* (1978) *supra*, 436 U.S. 180, 220-221 [56 L.Ed.2d 209, 239-240], dis. opn. of Brennan, J.)

While we are unable for these reasons to accept the dichotomous view of preemption doctrine which the UFW urges in this context, we recognize that there are aspects of agricultural labor relations and its

---

tion doctrine rests partly upon principles of federalism that do not pertain here, and insists that the correct analysis is in terms of exclusive primary jurisdiction. This very argument was made and rejected by the Supreme Court in *Kaplan's*, the court noting: "Although concern for principles of federalism influenced the Supreme Court's initial decisions to permit exceptions to the preemptive reach of the NLRA [citations], the contours of the preemption doctrine have been largely shaped by a different consideration; the need to avoid conflicting decisions between the NLRB and the courts. . . . Consequently the courts have applied the preemption doctrine even in cases in which respect for state rights has no part, such as controversies between the NLRB and the federal courts. . . . [¶] *The problem which faces federal courts in NLRA preemption cases is identical to that which faces California courts in ALRA preemption cases.*" (26 Cal.3d at pp. 74-75; italics added.)

regulation in California which militate against an overly rigid application of federal principles. In contrast to the NLRB, which normally does not seek preliminary injunctive relief against picket line conduct, the ALRB has on occasion sought and obtained interim injunctions which regulate in detail the sort of conduct complained of here pending ultimate determination of the underlying charges through agency procedure.[2] The realistic possibility does exist that the type of injunctive relief which the ALRB considers appropriate in such situations will be at variance from the type of relief sought by a private party and otherwise entertained by a court, and that the nature of the variance will be material to the policies of the statute.

The UFW claims that the temporary restraining order issued in this case had precisely that effect. It prohibited the union and its agents from "[s]tanding, walking, driving, approaching or coming closer than a distance of one thousand (1000) feet in any direction from plaintiff's premises," except for the purpose of picketing; and it limited pickets to "not more than four (4) individuals . . . at or in the vicinity of each of the driveway entrances to plaintiff's premises . . . at a distance of not less than twenty-five (25) feet therefrom," and at a distance of 10 feet from each other "except when crossing while patrolling." A declaration filed by the UFW in opposition to the preliminary injunction asserts that in the agricultural context, where workers are employed for short periods of time within huge acreage, an important function of picketing in a greater than typical number is to demonstrate strength and solidarity, in order to bolster the morale of the strikers and to encourage other workers to participate. "Few pickets creates the impression that the strike is weak, and no worker will risk his job for a weak strike no matter how sympathetic he or she is." According to the declarant (a principal organizer for the UFW), the restraining order would have the necessary effect of ending the strike.

We of course express no view as to the merits of the union's claim in this regard, and we reject any implication that a union's interest in demonstrating solidarity might outweigh the public interest in preventing violence. We assume that appropriate limitations upon the number

---

[2]One such injunction, issued by the Monterey County Superior Court in Agricultural Labor Relations Board v. California Coastal Farms, Inc. (Super. Ct. No. 74978, filed July 3, 1979), and appended to the ALRB's brief, contains detailed provisions relating to the number and location of pickets, trespass, and limited access to employees on the grower's property.

or location of pickets is permissible where demonstrably necessary to prevent recurrence of violence or obstruction of access. (See *Kaplan's, supra*, 26 Cal.3d at p. 78.) It is apparent, however, that overly restrictive limitations may unlawfully intrude upon important rights protected by the act. It is also apparent that the agricultural context is different in certain respects from the typical industrial context as regards the function and effectiveness of picketing, and that understandably judges may not be quite so familiar with the unique problems presented. Thus, in deciding where the line ought to be drawn between permissible communication and prohibited coercion, the views of the ALRB, as "the expert administrative agency specially created by the Legislature to regulate disputes relating to rights and responsibilities arising under the ALRA" (*Vargas* v. *Municipal Court* (1978) 22 Cal.3d 902, 911 [150 Cal.Rptr. 918, 587 P.2d 714]) would be of particular significance.

A practical solution to this problem, through accommodation of competing interests, lies in recognizing court jurisdiction to entertain a private action seeking that type of relief, but in conditioning the *exercise* of that jurisdiction, as a matter of equitable discretion, upon a showing that the plaintiff has filed unfair labor practice charges with the ALRB, so as to give that interested agency an opportunity to participate in the proceedings or to seek relief on its own. The burden of filing such charges is minimal, and good reason for not filing such charges is difficult to imagine. And the trial court would be in a position to determine if and when delay for ALRB participation or action would unduly prejudice the plaintiff's interests. (*Vargas* v. *Municipal Court, supra*, 22 Cal.3d at p. 913.)

We do not determine that question here, however. The parties have neither briefed nor argued the matter of limitations upon the number of pickets as a separate issue, and the same is true of limitations upon civil trespass, also a difficult problem. (Cf. *Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392 [128 Cal.Rptr. 183, 546 P.2d 687]; *Vargas* v. *Municipal Court, supra*; *In re Catalano* (1981) 29 Cal.3d 1 [171 Cal.Rptr. 667, 623 P.2d 228].) The resolution of such complex issues would be inappropriate in the abstract posture of this case. The question addressed by the parties, and the question properly before us, is whether the trial court erred in deciding that it had no jurisdiction to provide *any* of the relief requested by petitioner against UFW conduct directed at employees and supervisors. We hold that it did.

Of course, it does not follow that an injunction would have been appropriate in this case. "It is the clear policy of the law that the drastic remedy of an injunction pendente lite may not be permitted except upon a sufficient factual showing, by someone having knowledge thereof, made under oath or by declaration under penalty of perjury . . . in such form that criminal sanctions of perjury might apply where material facts so declared to be true, are in fact not true or are not known to be true." (*Ancora-Citronelle Corp.* v. *Green* (1974) 41 Cal.App.3d 146, 150 [115 Cal.Rptr. 879].) The affidavits filed by petitioner contain no report of actual violence by or on behalf of the UFW, and the reports of threatened violence which they do contain are to a substantial degree based upon hearsay or upon threats made anonymously or by persons whose relationship to the union is not demonstrated. The same is true of allegations concerning obstruction of access. The UFW had submitted counteraffidavits, and the trial court had conducted no evidentiary hearing with respect to relevant factual issues in dispute. (*Kaplan's, supra*, 26 Cal.3d at p. 80.) Given the applicable limitations upon the issuance and scope of injunctions in labor matters (see Code Civ. Proc., § 527.3; *Kaplan's, supra*, 26 Cal.3d at pp. 80-81), there is thus substantial question whether the evidence submitted on behalf of petitioner would have been sufficient to warrant injunctive relief. And, of course, those issues may now be moot. Thus, we decline to order the trial court to issue the injunction prayed for by petitioner, or any other injunction.

A peremptory writ of mandate will issue directing respondent court to vacate its order denying preliminary injunction, and to undertake such further proceedings consistent with the views expressed herein as may be deemed just and equitable.

Racanelli, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied May 27, 1981, and the opinion was modified to read as printed above. The petition of real party in interest for a hearing by the Supreme Court was denied July 29, 1981. Bird, C. J., did not participate therein.